Lee E. DREW, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 984S342.

Supreme Court of Indiana.

Feb. 10, 1987.

Richard E. Beers, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Appellant-defendant Lee E. Drew appeals from a conviction for felony murder [1] and burglary,[2] both class A felonies. Defendant raises three issues on appeal:

---

1. Ind.Code § 35–42–1–1(2).

2. Ind.Code § 35–43–2–1.

1. effect of promises by prosecutor upon voluntariness of resulting confession;

2. denial of mistrial and admonishment following juror outburst and replacement; and,

3. sufficiency of evidence.

On October 3, 1983, the Fort Wayne Police initiated an investigation of a burglary/homicide at the home of 87 year-old Robert Smith. Smith's house was in great disarray and his body was discovered in a bedroom with two large-caliber gunshot wounds in the chest. In the course of that investigation, Detective Marshall "Mitch" Eby contacted the defendant, a prior paid informant for Eby, requesting the defendant's help in gathering information about the possible murder weapon, a .44 caliber revolver which Eby believed may have been stolen by the murderers during an unrelated burglary. A few days later, the police acquired information from a witness to a conversation among the defendant, John Phillips, and Brice Littlejohn which implicated the defendant in the burglary/homicide. On the morning of October 13, 1983, Eby and another detective brought the defendant in for questioning.

The detective explained to the defendant his Miranda rights and the defendant signed a waiver. Defendant expressly refused presence of counsel. Defendant initially denied any involvement with the crime and claimed he was at his brother's home on the night of the murder. Eby then told defendant that a witness had overheard defendant discussing details of the crime with two others. Defendant then admitted the conversation but continued to deny any direct involvement with the crime. Defendant maintained that he could not have been involved because he was at his girl friend's house the night of the murder.

Eby continually accused the defendant of lying and explained to the defendant the penalties for felony murder, including the death sentence. Eby also told the defendant that if he would cooperate with the investigation, Eby would "go to the wall" for defendant, implying that he would attempt to intervene on defendant's behalf with the prosecutor. After Eby stated to another detective, in defendant's presence, that the defendant would be charged with the crime, the defendant became upset and inquired what kind of "deal" he could make and how much help Eby could provide. Defendant indicated that he had knowledge of material facts surrounding the crime, but he did not clearly indicate the extent of his involvement. Eby explained that the prosecutor had the sole authority to make any "deal" with the defendant, whereupon defendant requested to speak with the prosecutor.

Eby contacted Allen County Prosecutor Stephen Sims. Through Eby, Sims offered defendant an opportunity to avoid imprisonment. Sims offered to withhold prosecution of the defendant on the burglary/homicide charge and to acquire for the defendant suspended sentences for other charges pending against the defendant. In exchange, defendant was required to provide a full and truthful videotaped statement of all relevant events, testify against all others involved in the crime, and pass a polygraph test. The detectives carefully explained the agreement to defendant, and defendant proceeded to relate the details of his conversation with Phillips and Littlejohn and the events which occurred on the night of the murder. Defendant gave a full confession of his involvement in the crime and then submitted to a videotaped statement which again included express waivers of his right to silence and counsel. Defendant subsequently withdrew his willingness to testify against the others, and the present prosecution resumed.

## ISSUE I

Defendant contends that the trial court erred in admitting his confession, and argues that the statement was involuntary because it was coerced by the State's promise of immunity and suspended sentences on other charges.

Admissibility of a statement or confession is controlled by determining from the

totality of the circumstances whether or not the confession was given voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Massey v. State* (1985), Ind., 473 N.E.2d 146; *Anderson v. State* (1984), Ind., 466 N.E.2d 27. We review the question on appeal as we do other sufficiency matters. We do not reweigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's finding. *Massey v. State, supra; Long v. State* (1981), Ind., 422 N.E.2d 284.

The record indicates that Detective Eby and the defendant appeared to have a friendly relationship, had known each other for a considerable time, and had cooperated with each other on previous occasions. Although defendant was only nineteen years old, he had numerous prior experiences with police officers and customary police procedures. It is uncontroverted that defendant understood and voluntarily waived his Miranda rights. Detective Eby interrogated the defendant for approximately one hour before defendant gave his full confession. During the course of interrogation, defendant requested, and was granted, the opportunity to converse with Eby alone. Eby testified that defendant never requested presence of counsel.

■ While interrogating the defendant, Detective Eby explained the penalties for felony murder and that the death penalty was possible under the facts of this case. We have previously held that an explanation of possible penalties is an insufficient "inducement" to render a confession involuntary. *Mitchell v. State* (1983), Ind., 454 N.E.2d 395. In the context of the interrogation in the instant case, we do not view Eby's statements as "threatening", nor do we sense that the explanation induced the confession. Further, we do not view Eby's statement about charging the defendant with the crime as a threat which would render defendant's confession involuntary. There had been no indication at that time that Detective Eby or anyone else implied that defendant's confession or cooperation would preclude his prosecution. While defendant argues that Eby's statements implied that Eby would intervene on defendant's behalf with the prosecutor, Eby made it clear that he had no authority to make any "deal." We have held that indefinite statements by police such as "seeing what they can do for him," to "help in every way he could," or it would "be in his best interest to tell the whole story" are insufficient inducements to render a subsequent confession inadmissible. *Long v. State, supra; Turpin v. State* (1980), 272 Ind. 629, 400 N.E.2d 1119; *Ward v. State* (1980), Ind.App., 408 N.E.2d 140.

Detective Eby testified that immediately following his statement that defendant would be charged with the crime, the following transpired:

Eby: And Lee got kind of shook. I thought for a minute he might even be going to cry. His eyes got a little watery. And he said, "Mitch, how much trouble am I in?" And we explained to him, you know, I explained to Lee that this is not a little house burglary situation like he'd been involved in before.

Q  What happened next?

A  He wanted to know if I could help him. I told him that I couldn't help him. I told him that I—that there was nobody could help him except Mr. Sims. I told him that Stephen Sims was the Prosecutor of Allen County and I think I even used the terminology that right now the only man that's God in his life was Mr. Sims. Nobody could help him, not even the Pope.

Q  Had he admitted any involvement in the burglary/homicide at this point in time?

A  No.

Q  Well, what happened then?

A  Then he said, "Well, I want to talk to Mr. Sims." And I said, "Why?" I said, "Are you ready to make a statement?" And he nodded his head that he was. I said, "Are you involved?" And he just set there going like this

(witness shakes head indicating affirmative). I said, "Lee,—"

Q Now for the record, are you shaking your head yes or not?

A Yeah, he had his head kind of buried down. He was shook at this time. I mean, he was, to me, remorseful. He was scared.

Q Had he been yelled at?

A No, no.

Q Had you been threatening him, Mitch?

A No.

Q Making any promises?

A No.

Q So he's got his head down and, for the record, did he shake his head yes or no when you asked him if he was involved?

A I'm going to say it was a yes. He was like this (demonstrating) at the table. He had his elbows on the table and he done one of these numbers— one of these things here (demonstrating), so I'm going to say that he—

MR. BEERS: Excuse me, Your Honor. I'm going to object. I don't know that we want this gentleman to speculate.

COURT: Objection sustained as to his— he's already demonstrated to the jury what he—and what he's going to say is obviously subject to being stricken and the jury is instructed to disregard his interpretation. You've seen him demonstrate and you'll have place your own interpretation on it.

Q So after he made his head move and he had said, "Yes, I'm involved," to your question?

A Well, we're at an assumption again.

Q Okay. Did he make any statement to you about what he could give you or anything like that?

A I asked Lee, I said, "What can you give?" And he said, "I can give you the whole thing."

Q Did he say anything else other than, "I can give you the whole thing?"

A No, that was as far as it went. He wanted to see Mr. Sims.

The trial court overruled defendant's motion to suppress "all communications, confessions, statements and admissions" made by the defendant following his arrest. At trial, the court overruled defendant's objection to introduction of the videotaped confession. Defendant argues that because the statement was given in return for a promise of immunity or leniency, the confession is not voluntary and thus inadmissible, citing *Shotwell Manufacturing Company v. United States* (1963), 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357. Defendant further contends that, because the State lacked the authority to fulfill its promises of immunity and leniency, the confession is inadmissible.

■ As to the latter point, defendant relies upon the concurring and dissenting opinion of Justice Prentice in *Ashby v. State* (1976), 265 Ind. 316, 322, 354 N.E.2d 192, 196, which argued that because the State lacked authority to guarantee a reduced sentence in exchange for a confession, such promise was a false representation and thus an "undue influence" proscribed by Ind.Code § 35–1–31–5 (Burns 1975) [Acts 1905, ch. 169, § 239, p. 584 (Repealed 1981)]. We decline to apply this rationale in the instant case, and observe that the prosecutor was here capable of assuring defendant the promised benefit. The agreement involved multiple promises by the prosecutor, the primary one being not to prosecute the defendant for the burglary/homicide if the defendant complied with the terms of the agreement. Such a decision lies within the prosecutor's discretion. *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604. With respect to the prosecutor's promise of securing suspended sentences for the defendant's other pending charges, we recognize that the trial court would have to approve such an arrangement. We note, however, that the prosecutor had the capacity to assure the defendant that he would not go to prison. If the trial court were to reject the plea agreement, the prosecutor could dismiss the charges pursuant to Ind.Code § 35–34–1–13 and, in essence,

perform his part of the agreement. Thus we find that the prosecutor's promises were not false representations, and not a basis to exclude the resulting confessions.

■ Defendant places greater emphasis upon his contention that the promises of leniency impaired the voluntariness of the confession, rendering it inadmissible under *Shotwell, supra, Bram v. United States* (1897), 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568; and *Brady v. United States* (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. The crucial element in each of these cases was whether a confession was "compelled" or "extracted" as the result of promises of leniency.

This approach is likewise reflected by decisions of this Court. In *Fowler v. State* (1985), Ind., 483 N.E.2d 739, 744, we stated:

A confession is inadmissible when obtained by a promise of immunity or mitigation of punishment. *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192. The relevant inquiry is *whether the challenged police conduct induced* a confession which was not freely self-determined. [Emphasis added]

The case at bar is strikingly similar to the facts in *Fowler,* wherein it was emphasized that the appellant "voluntarily admitted his guilt by nodding his head before the alleged inducements." 483 N.E.2d at 744. We there observed that, while the full verbal confession was made subsequent to the inducements, "the proverbial cat had already been let out of the bag." *Ibid.*

In the instant case, before receiving the State's offer of leniency, the defendant indicated that he was ready to make a statement, and that he was involved in the crime. Furthermore, and of even greater importance, the promise of immunity and leniency was not initiated by the State, but rather resulted in response to a specific request by the defendant, who solicited the promises as a precondition for making a full statement. Thus, the defendant had already manifested the propensity and willingness to make a voluntary statement before the occurrence of any action on the part of the State. We therefore find that

the resulting statement was freely self-determined, and not induced by police or prosecutorial conduct.

This conclusion is also well supported by the case law in other jurisdictions; *see, e.g., Taylor v. Commonwealth* (1970), Ky.App., 461 S.W.2d 920, 922, *cert. denied sub nom. Brown v. Kentucky,* 404 U.S. 837, 92 S.Ct. 126, 30 L.Ed.2d 70 (1971) ("here, the promise was *solicited* by the accused, freely and voluntarily, so they cannot be heard to say that in accepting the promise they were the *victims* of compelling influences."); *State v. Richardson* (1986), N.C., 342 S.E.2d 823, 831 ("Promises or statements indicating to an accused that he will receive some benefit if he confesses do not render his confession involuntary when made in response to a solicitation by the accused."); *State v. Harwick* (1976), 220 Kan. 572, 575, 552 P.2d 987, 990 ("When the promises are solicited by the accused, freely and voluntarily, the accused cannot be heard to say that in accepting the promise he was the victim of a compelling influence."); *People v. Wright* (1984), 82 Ill.Dec. 817, 127 Ill. App.3d 747, 469 N.E.2d 351, 361 (Confession following State's promise not to seek death penalty deemed voluntary, as defendant initiated discussion and stated he would not confess unless State promised not to seek death penalty); *State v. Starling* (1983), 188 N.J.Super. 127, 456 A.2d 125 (Confession deemed voluntary when made in response to promise made by prosecutor which was in first instance solicited by defendant); *State v. Hutson* (1976), Mo. App., 537 S.W.2d 809 (Confession given pursuant to plea agreement negotiations initiated by defendant held voluntary).

## ISSUE II

After the trial court announced a recess during defendant's trial, one of the jurors, in the presence of the other jurors, sought to be excused. The following colloquy between the juror and the court took place:

Court: "Yes sir?

Juror: I don't think I want to be in this case, Judge.

Court: Well—

Juror: I don't want to be in this case. I am getting upset about it and I don't want to be on it.

Court: Ladies and gentlemen—just sit right there until—

Juror: Please let me out of this case.

Court: Well, sir, will you please be quiet. I'll talk to you in a moment. Ladies and gentlemen, while you're outside the courtroom, please do not discuss this case amongst yourselves or with any other party, and will you take the balance of the jurors—you will remain, sir—and take the rest of the jurors and the alternates back to the jury room."

Outside the presence of the other jurors, the court and counsel questioned the protesting juror regarding the reasons for his sudden aversion to further jury service. The juror assured the court that he had not discussed his concerns with any of the jurors. The juror was then excused and replaced by an alternate. Defendant moved for a mistrial, which was denied, after which defendant requested that the remaining jurors be questioned about the outburst. This was also denied. Defendant contends that these rulings constitute reversible error, and that the trial court was required to interrogate individual jurors as in a case involving jury exposure to prejudicial pre-trial publicity. *See Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819. However, even when dealing with prejudicial publicity, the trial court may exercise discretion in deciding whether to question the jurors:

> At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril.

*Lindsey, supra,* 260 Ind. at 359, 295 N.E.2d at 824.

The substantive content of the juror's outburst not only failed to place the defendant in substantial peril, but, moreover, failed to convey to the jury any prejudicial matter whatsoever. We find nothing in the record to indicate that the incident resulted in any prejudice toward the defendant. The trial court exercised proper discretion in declining to further magnify the inconsequential incident by questioning the remaining jurors. We find no error on this issue.

## ISSUE III

Defendant contends that the evidence was insufficient to sustain his conviction.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence most favorable to the State discloses that defendant and two others broke into Robert Smith's home with the intent of obtaining money and property. During the course of that burglary, Robert Smith was fatally wounded. The evidence is clearly sufficient to support the jury's determination of defendant's guilt.

The judgment of the trial court is affirmed in all respects.

GIVAN, C.J., and PIVARNIK and SHEPARD, JJ., concur.

DeBRULER, J., concurs in result.