John L. MORGAN, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 06S00–9101–CR–56.

Supreme Court of Indiana.

March 12, 1992.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder and Conspiracy to Commit Murder, a Class A felony. On the murder charge, appellant was sentenced to sixty (60) years and on the conspiracy charge he was sentenced to fifty (50) years, the sentences to be served consecutively.

In October of 1985, John Mason hired appellant to kill his ex-wife, Patricia Mason. Mason paid appellant $2,000 in advance and $5,000 after the victim was killed. After making the arrangements, Mason drove appellant by the home of his former wife to acquaint him with the surroundings. Shortly thereafter, appellant drove to the victim's home. He told Patricia her ex-husband had sent him to fix the fence so the horses would not get out. He told her he needed a hammer and nails. They went to the garage, and appellant secured a hammer. While the victim was looking for nails, appellant hit her in the head with the hammer then went to his van, obtained a gun, returned, and shot her four times in the head killing her.

A few days later he told Jim Comer, who had acted as go-between, that he wanted the rest of his money. Comer then obtained the money from Mason and delivered it to appellant. The case was still under investigation when in 1990 Robert Greene approached Detective Shrock to get help for his son who had been arrested. Greene told Shrock that when he had been employed by John Mason as a truck driver he had overheard a conversation between Mason and Comer that Comer had introduced Mason to a man from Tennessee who had killed Patricia Mason.

Police traced Comer to Florida, had Greene telephone him, and they taped the conversation. Greene then was taken to Florida by the police officers to personally confront Comer. Greene was fitted with a transmitter and tape recorder, and in the ensuing conversation between Greene and Comer, Comer agreed to return to Indiana. He then gave a statement to the police.

Comer agreed to meet with appellant. On April 10, 1990, the police equipped him with a tape recorder after which he met with appellant at a tavern in Alexandria. During that taped conversation, appellant mentioned murdering the victim, that Mason wanted it done, and the money he had received. Appellant then was arrested and taken to the Boone County jail.

Following his arrest, appellant asked to see Detective Sergeant William McCallister of the Indiana State Police. Appellant had worked for McCallister as a confidential informant. After being apprised of the facts of the case, McCallister met with appellant. Appellant first said he had not killed anyone and did not know anything about it. McCallister then told appellant he was not interested in any further conversation. He obtained the tape which had been made of the conversation between appellant and Comer and let appellant listen to it.

After the tape was played, appellant asked McCallister where he would have to serve his time. McCallister told him that was up to the Department of Correction, but he cautioned appellant that the offenses he indicated in his conversation were capital offenses. McCallister further advised appellant that the prosecuting attorney would forego the death penalty if appellant gave him a statement. Appellant then observed that he thought that any such agreement should be in writing, to which McCallister agreed, and an agreement in writing was obtained from the prosecuting attorney to the effect that she would forego the death penalty in exchange for appellant's statement. Appellant then gave a statement confessing that he had been hired by Mason to kill the victim and had carried out the killing.

Prior to trial, appellant moved to suppress the statements he had made to McCallister and Detective Shrock; however, his motion to suppress was denied. At trial, the statements were admitted over appellant's objection. The sole assignment

682

of error in this appeal is the court's ruling on the admission of the confession.

Appellant claims the confession was induced by the officers making promises and threats to him which intimidated him into making his confession in an attempt to escape capital punishment. It is well established in Indiana and throughout the nation that a confession obtained by promises of immunity or mitigation of punishment is in violation of the Fifth and Fourteenth Amendments to the United States Constitution. *Smith v. State* (1989), Ind., 543 N.E.2d 634; *Drew v. State* (1987), Ind., 503 N.E.2d 613; *Massey v. State* (1985), Ind., 473 N.E.2d 146; *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192.

In the *Smith* case, although the principle of law was stated, this Court affirmed Smith's conviction because the evidence showed that the officers in fact had not threatened or promised Smith to induce his confession. In *Drew*, this Court again affirmed the conviction holding that advising a defendant of the possibility of the death penalty was not "an inducement," *see Drew, supra* at 615, and that the officers' conduct was not threatening. In *Massey*, the police had advised the defendant of penalties and their desire for him to cooperate with them. However, this Court held that this did not amount to coercion rendering his confession inadmissible. His conviction was affirmed.

In *Ashby*, the conviction was reversed for the reason that the officers and the prosecutor informed the defendants that a charge would be filed but the State would accept a lesser penalty on a plea. However, after the defendants made a confession and appeared in court, they were not permitted to plead guilty but were put on trial and sentenced to life imprisonment. This Court set forth the general rule stated above and held that this in fact did constitute a coerced confession and ordered a new trial.

Appellant cites *Bram v. United States* (1897), 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, wherein Justice White traced the history of the general rule back into the English common law and discussed the status of

the rule as it existed at that time in various jurisdictions throughout the United States including Indiana. However, he specifically confined his ruling in that case to the facts therein. There the defendant had been arrested on shipboard for murder on the high seas.

The ship made for the nearest port, which happened to be Halifax, Nova Scotia. Upon arriving in port, appellant was removed from the ship and taken to the police station where an officer required him to strip and proceeded to question him, telling him that a shipmate, who also had been arrested, had stated to them that he had seen Bram commit the murder and that Bram had better tell them all about it or it would go hard on him. Bram subsequently made an incriminating statement. The Supreme Court ruled that this statement in fact had been coerced.

Appellant attempts to liken his situation to that of the many cases which have been reversed because of the application of the rule. However, as in *Bram*, in almost every instance, the threats and intimidation have been made by police officers in their initial interrogation of suspects and as in *Ashby* those confessions have not been permitted to stand.

The State answers appellant's contentions by observing that the situation in the case at bar more nearly approximates a plea bargain than it does threats and promises of leniency made by arresting officers. Appellant counters that this is a "mixing of apples and oranges" and that the present situation does not approximate a plea bargain. It is true that at the time appellant was being questioned by the officer the case had not arrived at a point where a plea bargain would be in order. However, it comes nearer to that type of situation than it does to the interrogation by officers where a threat and improper promises are being made.

Here, appellant had called specifically for McCallister because he had worked with him and apparently had more trust in him than he did other officers. McCallister did not attempt to question or intimidate appellant. When he arrived, he asked appellant what he wanted, and appellant proceeded

to tell him he was innocent and did not know anything about the murder, to which McCallister replied that there was no use to talk to him.

However, in order to fully inform appellant of his situation, he obtained the tape containing appellant's statements to Comer. It is obvious that after appellant listened to this tape he realized he had incriminated himself and asked McCallister where he would have to serve his time. At that time, McCallister advised him that he in fact was facing a possible capital conviction. This was much the same situation which prevailed in *Drew, supra.* Even when given this information, appellant did not make any further statement until he obtained McCallister's intercession to obtain a written promise from the prosecuting attorney that she would forego filing a death penalty charge against appellant if he would make a full statement of the facts of this case. This promise on the part of the prosecuting attorney was obviously for the purpose of obtaining evidence against Mason. The prosecutor already was in possession of incriminating evidence against appellant by his own statements on the tape.

In applying Justice White's statements in *Bram* and the various cases, some of which are cited above concerning this rule, we find there is no evidence in this record to indicate improper action by the police authorities or the prosecuting attorney. Appellant at his own request was furnished factual information concerning the State's case and the possibilities of the death penalty. It was his choice to make a statement but only after the prosecuting attorney made her promise in writing, which she did.

The trial court did not err in denying appellant's motion to suppress his statement.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.