**Duane TURNER, Defendant–Appellant,**

v.

**STATE of Indiana Plaintiff–Appellee.**

**No. 18S00–9510–CR–1133.**

Supreme Court of Indiana.

June 24, 1997.

Kelley N. Bryan, Bryan and Bryan, Muncie, for Defendant–Appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

SELBY, Justice.

Defendant, Duane Turner, was charged with Count I, Murder; Count II, Criminal Confinement as a class B felony; Count III, Conspiracy to Commit Robbery Resulting in Serious Bodily Injury, a class A felony; and Count IV, Attempted Robbery Resulting in Serious Bodily Injury as a class A felony. A jury found him guilty after trial of all charges. The judge entered judgment of conviction on all charges except Count III. The court sentenced him to Count I, life imprisonment without possibility of parol; Count II, 20 years; and Count IV, 45 years. In this direct appeal defendant presents three issues: 1) Were his pre-trial statements voluntarily given? 2) Did the trial court err by allowing admission of evidence that defendant shot through a door the evening before the robbery and murder? 3) Did the giving of disapproved jury instructions on the presumption of innocence constitute fundamental error? We find that defendant voluntarily gave his statement, that the evidence of the shooting was properly admitted, and that the giving of the jury instructions did not constitute fundamental error. We affirm defendant's convictions and sentences.

## FACTS

On the evening of September 24, 1994, defendant and a group of friends drank and partied at a graveyard near Ball State University's campus. One friend, Larry Newton, decided that he wanted to go to Ball

State and rob someone and asked defendant if defendant would join him. Defendant agreed to go with him, and another friend, Chad Wright, agreed to take them in his car. Newton stated, "I'm hyped and I feel like killing somebody." (R. at 1325.)

Once on campus the three drove around until around 2:00 a.m. when they spotted Chris Coyle. Coyle, a Ball State student, was returning from walking home a female friend. They picked Coyle up and Newton demanded money from him. Coyle did not have any money and so stated. Newton forced Coyle out of the car and shot him in the back of the head. He then handed the gun to defendant, who shot Coyle's body, now lying on the ground, in the shoulder. Coyle died from the first shot.

## DISCUSSION

### I. Defendant's Statements

The police arrested defendant at his grandmother's home on September 28, 1994 at around 6:00 a.m. The SWAT team located and handcuffed him. Then, Officer Stanley read him his rights and the warrant for his arrest. The police transported him to the Criminal Investigations Division ("C.I.D.") of the Muncie Police Department where he signed a waiver of rights form, and Officer Stanley began questioning him at around 7:41 a.m. Defendant spoke with his mother in private at around 8:15 a.m., and she observed part of the interrogation. He was again read his rights before giving a videotaped statement. In this statement, defen-

dant admitted riding in the car with Newton but denied any involvement in the robbery. After the interrogation, defendant was detained in the Delaware County jail.

■ Later in the day, defendant returned to C.I.D. where Officers Singleton, Bradshaw, Hiatt, and Wiemer further questioned him. Defendant again acknowledged and waived his rights prior to questioning. These officers told him that they knew defendant was lying because his first statement did not corroborate a statement they had taken from Newton. Officer Singleton told him this could be a death penalty case and that defendant should tell the truth to help himself. The prosecuting attorney confirmed that this was a serious matter and could be a capital case.[1] Before defendant gave his second videotaped statement, he inquired about the charge he would face. Officer Hiatt explained that he faced charges that might range from criminal recklessness to murder. Defendant again waived his rights at around 6:37 p.m. and gave a second videotaped statement. In this statement, defendant admitted shooting the second shot.

■ Defendant objects to the admission of this second statement, claiming that it was the result of threats, trickery, and promises of a lesser charge.[2] The trial court held a suppression hearing and, in a Judgement on Motion to Suppress dated February 8, 1995, found that all statements were freely and voluntarily given. The judge again ruled at trial, over objection, that the statement was

---

1. At some point during the afternoon interview, Officer Singleton inquired of defendant if he would like to speak with the deputy prosecutor and defendant said he would. Shortly thereafter, Officer Singleton asked deputy prosecutor Jeffrey Arnold to step into the room. Arnold confirmed that there was a possibility that defendant might be facing a death penalty case.

We emphasize that we do not generally condone a prosecutor encouraging a pre-trial statement by a witness during police interrogation and then proceeding as counsel of record in the case. Such may lead to a conflict if the defense needs to call the prosecutor as a witness. *See* Ind.Professional Conduct Rule 3.7.

In the case at bar, the trial court correctly handled the matter by examining Officer Singleton, consulting the ethics rules, and recessing to allow the defense to investigate whether Arnold

needed to be called. The defense investigated and chose not to call Arnold as a witness.

2. The State claims that defendant has waived this issue by failing to include in the appellate record an actual videotape of the statement. The State believes defendant's inclusion of transcripts of the videotaped statements is not sufficient for this Court's review because it deprives this Court an opportunity to view the demeanor of defendant and the interrogating officers. In support of their waiver claim the State cites *Seay v. State,* 529 N.E.2d 106 (Ind.1988). We find that there is no issue, as in *Seay,* about whether the transcripts accurately report the content of the video. The State introduced the statements at trial. The statements were certified by the person who transcribed them, and neither defendant nor the State contests their accuracy.

admissible. We hold that substantial evidence of probative value supported this determination.

■ A court may not admit a defendant's confession into evidence unless the defendant voluntarily gave the statement. U.S. CONST. amends. XIV, V. The trial court must determine from the totality of the circumstances that the defendant gave the confession voluntarily and "not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused." *Collins v. State,* 509 N.E.2d 827, 830 (Ind.1987); *Drew v. State,* 503 N.E.2d 613, 615 (Ind.1987). The State must prove the voluntariness of the statement beyond a reasonable doubt. *Johnson v. State,* 513 N.E.2d 650, 651 (Ind.1987); *Mitchell v. State,* 454 N.E.2d 395 (Ind.1983). This Court reviews the trial court's determination to ensure that substantial probative evidence supports the court's findings. *Collins,* 509 N.E.2d at 830.

■ An explanation by the police that the accused might face a capital sentence does not constitute a threat. *Drew v. State,* 503 N.E.2d 613, 615 (Ind.1987); *Mitchell,* 454 N.E.2d at 398. A truthful accusation that the police do not believe an accused is telling the truth does not constitute fraud or trickery when an accused's story does not match that of another witness. *See Swaney v. State,* 176 Ind.App. 114, 374 N.E.2d 554, 556 (1978). Vague assurances by police that making a statement is in the accused's best interest do not constitute promises of leniency which would render a statement involuntary. *Collins v. State,* 509 N.E.2d at 830.

There was certainly substantial evidence of probative value from which the trial judge could decide that defendant's statement was voluntarily given. Defendant was read his rights two times during the afternoon interview and a total of five times on the day he was arrested. At three separate and distinct points he signed a waiver of his rights. He was allowed to speak with his mother in the morning and was given a break between morning and afternoon questioning. During the break, he was allowed sufficient time to rest and eat.

Evidence shows that the police did not threaten defendant, but rather that they explained to him the possibility that he was involved in a death penalty case. Further, the police did not try to trick defendant into giving a statement. The police honestly told him that they did not believe he was telling the truth. They based this opinion on facts related to them by Newton. The police did not try to trick defendant into believing he might face a lower charge than he actually faced either. Officer Hiatt personally believed Criminal Recklessness would not be the charge defendant faced. This belief did not turn the truthful statement, that in such a homicide case defendant could face a charge from reckless homicide to murder, into trickery. Furthermore, neither this explanation of the range of charges defendant might face or the vague statements by Officer Singleton that defendant would help himself by giving a statement constituted inducements or promises of leniency. The record clearly contains substantial evidence that the police did not threaten or trick defendant or make promises of leniency.

## II. Prior Bad Act Evidence

On Friday September 23, 1994, the evening before the murder, defendant attended a party at Ball State. An argument erupted, and the hosts forcibly ejected defendant and his friends. One friend remained locked inside so defendant shot a bullet through the door.

Afterwards, defendant relayed this story to co-defendant Newton. Newton assured defendant that he had been wronged and that they would get the party throwers back. Defendant responded, "hell yeah." (R. at 1325.)

Then on the evening of the murder, Newton said he wanted to go to Ball State and rob someone, and defendant agreed to go with him.

The State gave pre-trial notice that it intended to introduce the evidence involving the Ball State party shooting. Defendant objected to this evidence as prior bad act evidence. At a pre-trial hearing, the State argued that the incident could be introduced for several valid reasons, including to show

motive, intent, and plan. The trial court ruled the evidence admissible as showing motive and plan.[3] At trial, defendant again objected to the submission of the evidence, and the court again ruled it admissible to show motive and plan. Defendant claims the court erroneously ruled the evidence admissible. We find no reversible error.

Indiana Evidence Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." Ind.Evidence Rule 404(b). "[M]otive is always relevant in the proof of a crime." *Chanley v. State*, 583 N.E.2d 126, 129 (Ind. 1991). We review a court's evidentiary ruling for abuse of discretion.[4] *Kimble v. State*, 659 N.E.2d 182, 184 (Ind.Ct.App.1996).

The trial judge did not abuse his discretion by allowing the testimony about the Ball State party shooting to show Newton and defendant's motive.[5] The judge could find that the incident, and defendant's resulting anger toward the Ball State students, helped explain why Newton and defendant chose to rob and kill a Ball State student. *See Kimble*, 659 N.E.2d at 185 (evidence that defendant belonged to racist organization admissible to prove motive in killing black woman). Thus, the judge did not err by allowing the testimony.

3. The State argues in its Brief that the evidence should be admissible to show intent. The State claims that a defendant's pre-trial statement can suffice to put intent in issue. *But cf. Wickizer v. State*, 626 N.E.2d 795, 799 (Ind.1993); *Butcher v. State*, 627 N.E.2d 855 (Ind.Ct.App.1994). The trial judge did not let the prior bad act in as relevant to intent, and we, thus, make no ruling on this issue.

4. Prior bad act evidence must meet the test of Indiana Evidence Rule 403 as well as the test of Rule 404 in order to be admissible. *Hardin v. State*, 611 N.E.2d 123, 129 (Ind.1993). The trial judge did not abuse his discretion in finding the probative value of the shooting incident outweighed the likelihood of prejudice, and defendant does not so argue.

5. We do not agree that the evidence was admissible to show plan. Prior bad act evidence to

### III. Jury Instructions

The trial court gave preliminary instruction 14 and final instruction 20 without objection from defendant. Defendant now claims that the instructions were erroneous and that the error was fundamental. Defendant's failure to timely object constitutes waiver.

The given instructions were identical and read:

In clothing those charged with crime with the presumption of innocence, the law does not contemplate that thereby the guilty should be shielded from merited punishment. Its object is to protect the innocent, so far as human agencies can, from the effects of unjust verdicts. The effect of this presumption is to withhold punishment from one charged with crime until all the facts necessary to constitute the offense charged have been proved to that degree of certainty fixed by law as beyond reasonable doubt.

(R. at 197, 228.)

Although such an instruction has been disapproved, by failing to object, Defendant waived any claim of error on appeal. Ind.Trial Rule 51(C); *Blackmon v. State*, 455 N.E.2d 586, 589–90 (Ind.1983).

We recommended against using a similar instruction in *Spradlin* where we agreed with the dissent in *Heald*. *Spradlin*

prove a plan is only admissible in certain circumstances.

The prior offenses "must tend to establish a preconceived plan by which the charged crime was committed. The crimes must, therefore, be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and charged crime."

*Hardin*, 611 N.E.2d at 130 (quoting *Malone v. State*, 441 N.E.2d 1339, 1346 (Ind.1982)); *see Lay v. State*, 659 N.E.2d 1005 (Ind.1995) (Shepard, C.J. dissenting). While the shooting incident may help explain why Newton and defendant planned to rob a Ball State student, there is no evidence of a preconceived plan which embraced both incidents. Because the evidence was properly admissible to show motive, this error is not, however, cause for reversal.

*v. State,* 569 N.E.2d 948 (Ind.1991); *Heald v. State,* 492 N.E.2d 671 (Ind.1986) (Dickson, J., dissenting). The *Spradlin* instruction read:

> The rule of law which clothes every person accused of the commission of crime with the presumption of innocence, and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid any one [sic] who is actually guilty of the commission of the crime to escape from just and merited punishment, but it is a humane provision of the law, which is intended, so far as human agencies can, to guard against the danger of an innocent person being unjustly accused and punished.

*Spradlin,* 569 N.E.2d at 951. The *Spradlin* holding effectively disapproved the line of cases approving such instructions, including *Rogers v. State,* 537 N.E.2d 481 (Ind.1989), which dealt with an instruction identical to instructions 14 and 20. While the instruction in *Spradlin* and that in *Rogers* (and the case at bar) are slightly different, they both "contain a potential for insidious interference with the right to fair trial." *Heald,* 492 N.E.2d at 686 (Dickson, J. dissenting). A jury receiving either instruction "is likely to infer that the presumption of innocence applies only to innocent defendants, and not to those 'actually guilty.'" *Id.* We recommend that in the future no such instruction be used. Defendant was, however, in the best position to prevent the danger of the use of such an instruction at trial when he could have and should have raised an objection.

Defendant attempts to give life to a dead issue, by claiming fundamental error. "Where an appellate court finds the error to be fundamental, such error need not be preserved by a contemporaneous objection." *David v. State,* 669 N.E.2d 390, 392 (Ind.1996). The doctrine of fundamental error was originally designed and intended to allow only a certain category of egregious errors to be addressed on the merits despite a failure to object at trial. "Such [fundamental] errors have been variously described as a failure to meet the requirements of due process of law, gross error which offends our concept of criminal justice, and the denial of fundamental due process." *Nelson v. State,* 274 Ind. 218, 219, 409 N.E.2d 637, 638 (1980), *modified, Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985) (citations omitted). "In order to rise to the level of fundamental error the error must constitute a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *Reynolds v. State,* 460 N.E.2d 506, 508 (Ind.1984).

There are no indications that defendant was denied his right to due process or that any type of egregious error occurred at trial. "When a defendant fails to make a contemporaneous objection to a jury instruction, we look at the instructions as a whole to see if the jury had been adequately instructed." *David,* 669 N.E.2d at 392. In the case at bar, preliminary and final instructions directed the jury to consider the instructions as a whole. (R. at 204, 235.) Preliminary and final instructions were given that mandated the presumption of innocence. Additionally, instructions explaining that the State had the burden to prove its case beyond a reasonable doubt were given. In context, the presumption of innocence and the prosecutor's burden were explained, in spite of the disapproved instruction. *See Sevits v. State,* 651 N.E.2d 278, 282 (Ind.Ct. App.1995); *Collins v. State,* 643 N.E.2d 375, 380–81 (Ind.Ct.App.1994). Furthermore, there were no allegations of lack of counsel, judicial interference and bias, or other blatant violations of basic and elementary principles which would have rendered the trial unfair in conjunction with instructions 14 and 20. *See Nelson,* 409 N.E.2d at 638. Thus, while instructions 14 and 20 are disapproved, their use did not give rise to an unfair trial.

### CONCLUSION

Defendant's conviction is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.