**Frank BURGETT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0102–CR–46.**

Court of Appeals of Indiana.

Nov. 20, 2001.

---

Michael Gene Worden, Indianapolis, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Frank Burgett (Burgett), appeals his convictions for attempted murder, a Class A felony, Ind. Code § 35–41–5–1, Ind.Code § 35–42–1–1, and carrying a handgun without a license, as a Class A misdemeanor, Ind.Code § 35–47–2–1.

We affirm.

### ISSUES

Burgett raises three issues on appeal, which we restate as follows:

1. Whether the State presented sufficient evidence to support his convictions for attempted murder and carrying a handgun without a license.

2. Whether the trial court committed fundamental error when it gave its preliminary instruction on reasonable doubt.

3. Whether the trial court abused its discretion by admitting evidence of prior bad acts under Ind.Evidence Rule 404(b).

*FACTS AND PROCEDURAL HISTORY*

On May 22, 1999, at approximately 10:00 p.m., Brion Daniels (Daniels) heard a knock at the back door of his home. When Daniels asked who was there, a man said "Roger." (R. 73). Daniels testified that "I opened the door. All I saw was three to four males and gunshots fired." (R. 73). Daniels was shot six (6) times.

On May 24, 1999, police officers visited Daniels in the hospital and showed him two photo arrays. Daniels was asked if anyone looked familiar to him. Daniels was unable to speak because he had a breathing tube down his throat, but he pointed to a photograph of Burgett. On May 26, 1999, the State filed an information against Burgett, charging him with attempted murder, carrying a handgun without a license, as a Class A misdemeanor, and carrying a handgun without a license, as a Class C felony.

On June 2, 1999, Burgett filed his Motion for Pretrial Disclosure of the State's Intention to Offer Rule 404(b) Evidence at Trial. This motion was granted on June 10, 1999. On December 4, 2000, the State filed its Notice of Intention to Introduce Evidence of Prior Bad Acts. On that same day, Burgett filed his Motion in Limine, which requested, among other things, that the State be precluded from discussing or mentioning any evidence of Burgett's prior bad acts.

Prior to the commencement of the jury trial, which also began on December 4, 2000, the trial court heard arguments regarding the introduction of evidence of Burgett's prior bad acts under Evid.R. 404(b). The State argued as follows:

With regard to the timeliness, and Judge, while the State did not file a formal notice as all three defense counsel have indicated, they took an extensive deposition of the victim in this case, Mr. Daniels. They also had statements from him given at the time in which Mr. Daniels was very specific that his shooting was in retaliation for his observation and cooperation with the police of the prior shooting, and his—there was no surprise to any of the defense counsel about what was coming.

Secondly, as the Court knows, there has been some—there have been some shifts in the Prosecutor's Office and I took this case over recently.

But the bottom line is, the purpose of the 404(b) is to give defense counsel notice of what they might expect so that they can adequately prepare for it. That notice was given in February of 2000 when the victim was deposed. It was given even farther back than that, in June—I'm sorry May of 1999 from the statements of the defendant. They have had more than adequate notice, and for that reason the State requests that while this was not formally done that the defense had more than adequate notice that this was likely to be an issue in the case.

(R. 25–27). The trial court held as follows:

It's discretion [sic] with the Court whether to allow the 404(b), and given the election of the prosecutor who was handling this and therefore a change in the personnel in the Prosecutor's Office and also the nature of the 404(b) and the awareness on the part of defense counsel of the existence of this evidence, the Court will permit the State to offer that 404(b). I think it will come in, both the gang and the drug activity and the retaliation all as part and parcel of the motive for the—the alleged motive, their

theory of the motive, for the shooting in this case.

(R. 27).

After the jury was selected, the trial court read to the jury its preliminary instructions. In pertinent part, the jury was instructed as follows:

Preliminary Instruction No. 2

Under the Constitution of Indiana, the jury is given the right to decide both the law and the facts. In fulfilling this duty, you are to apply the law as you actually find it, and you are not to disregard it for any reason. The instructions of the Court are your best source in determining what the law is.

Preliminary Instruction No. 3

You are to consider all the instructions as a whole, and are to regard each with the others given to you. Do not single out any certain sentence, or any individual point or instruction and ignore the others.

Preliminary Instruction No. 12

The State has the burden of proving the Defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the

Defendant is guilty of the crimes charged, you should find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

(Appellant's Appendix at 113, 114 & 123). There were no objections to Preliminary Instruction No. 12. Moreover, the jury was instructed on all of the essential elements of attempted murder and carrying a handgun without a license.

At trial, Daniels testified that although it was dark outside on the evening he was shot, there was enough light coming from the inside of his home to be able to see the people standing immediately outside his back door. Daniels testified that Burgett was one of the men outside his home on May 22, 1999. Furthermore, Daniels testified that he saw Burgett with a gun. When asked "when you opened the door and the shots were fired, is there any doubt in your mind about who the individuals were who were there," Daniels stated "No. I know who they was and I identified them. I saw them." (R. 81). Daniels admitted that on the day he was shot, he drank alcohol and smoked marijuana. He also admitted that he had recently used crack cocaine, but not on the day he was shot.

On December 5, 2000, Burgett was found guilty of attempted murder and carrying a handgun without a license, as a Class A misdemeanor.[1] On January 10, 2001, Burgett filed a *pro se* motion to correct error. The motion was denied at the sentencing hearing held on January 12, 2001. The trial court sentenced Burgett to thirty-two (32) years, twenty-seven (27)

---

1.  The charge of carrying a handgun without a license, as a Class C felony, was dismissed on January 12, 2001.

years executed, five (5) years suspended, and five (5) years probation.

Burgett now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Burgett argues that the State did not present sufficient evidence to support his convictions for attempted murder and carrying a handgun without a license.

■ In reviewing sufficiency of the evidence claims, this court does not re-weigh the evidence or judge the credibility of the witnesses. *Mabbitt v. State*, 703 N.E.2d 698, 700 (Ind.Ct.App.1998). We consider only the evidence most favorable to the verdict, and the reasonable inferences therefrom, and will affirm if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.* Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense. *Id.*

Burgett does not deny that a person or several people attempted to murder Daniels. Rather, Burgett maintains that there was insufficient evidence to convict him of attempted murder and carrying a handgun without a license, because Daniels' testimony was incredibly dubious. In *Campbell v. State*, 732 N.E.2d 197, 206–207 (Ind.Ct. App.2000), this court held that:

under the "incredible dubiosity" rule, a court may impinge upon the jury's responsibility to judge the credibility of witnesses when confronted with inherently improbable, coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Incredibly dubious or inherently improbable testimony is that which runs counter to human expe-

rience, and which no reasonable person could believe.

*Id.* (citations omitted).

Burgett insists that:

Brion Daniels' perception of the events cannot be trusted by any reasonable person. His very ability to perceive events was muddled by his alcohol and drug use. His anger toward Shug, whom he believed was responsible for the death of his friend Tyreese, also clouded his perception of the events and his testimony at trial. Furthermore, at the time of trial Brion Daniels was under arrest for battery in one case and theft and receiving stolen property in another case. He testified at trial that no deals had been made with the State regarding those pending charges. Of course, his testimony says nothing about future deals.

All in all, Brion Daniels is a despicable person whose history and character clearly demonstrate he is not worthy of belief.

(Appellant's Brief at 8)(record citations omitted).

■ "[A]ssessing the impact of drug use on the witnesses' capacity to observe and testify is the jury's job, not ours." *Appleton v. State*, 740 N.E.2d 122, 128 (Ind.2001). Furthermore, "eyewitness testimony alone is sufficient to sustain a conviction." *Anderson v. State*, 469 N.E.2d 1166, 1169 (Ind.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1220, 84 L.Ed.2d 361 (1985). Daniels consistently maintained that he saw Burgett, with a gun, outside his home on May 22, 1999. On May 22, 1999, Daniels was shot six (6) times.

■ Burgett has not shown that Daniels' testimony was incredibly dubious. Burgett's theory is that Daniels is a bad person, and this court should not believe bad people. Not only is this not the law, it

does not establish that Daniels' testimony was not credible. It is the jury's prerogative to weigh the credibility of witnesses and to weigh the evidence. *Stephenson v. State*, 742 N.E.2d 463, 499 (Ind.2001), *petition for cert. filed* (Oct. 14, 2001). This court will not reweigh the evidence or judge the credibility of the witnesses. *Mabbitt*, 703 N.E.2d at 700. With this in mind, it was for the jury to determine whether to believe Daniels' story that Burgett attempted to murder him.

Consequently, we find that the jury could reasonably find that Burgett attempted to murder Daniels and that he carried a handgun without a license. Therefore, we find that there is substantial evidence of probative value to support the conclusion of the trier of fact. *See id.*

## II. *Reasonable Doubt*

■ Next, Burgett argues that the trial court committed fundamental error when it gave Preliminary Instruction No. 12, the instruction on reasonable doubt. Specifically, Burgett argues that the following sentences of Preliminary Instruction No. 12 are fundamentally flawed:

> If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crimes charged, you should find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

(Appellant's Appendix at 123).

■ Jury instructions are within the discretion of the trial court and will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. *Champlain v. State*, 717 N.E.2d 567, 569 (Ind.1999). As previously stated, Burgett did not object to Preliminary Instruction No. 12. In *Geiger v. State*, 721 N.E.2d 891, 895 (Ind.Ct.App.1999), this court held:

Ordinarily, failure to specifically object to a jury instruction results in waiver of that issue. Nevertheless, an error may not be subject to waiver if it is deemed "fundamental error." To be deemed fundamental, the error must be a substantial blatant violation of basic principles that renders a trial unfair to a defendant. Fundamental error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.

*Id.* (citations omitted). Thus, unless Burgett can demonstrate that the trial court committed fundamental error in instructing the jury, his claim is waived.

Ind. Const. Art. 1, § 19 provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Burgett contends that the use of the phrase "you should find him guilty" is mandatory and invades the province of the jury. Furthermore, Burgett argues, if we find that the term "should" is not mandatory language, the last sentence of the reasonable doubt instruction is clearly erroneous. Burgett insists that "[t]hat sentence informs the jury that if there is a 'real possibility' that the defendant is not guilty, the jury 'should' find the defendant not guilty. Obviously, if there is a real possibility that a defendant is not guilty, the jury *MUST* find the defendant not guilty." (Appellant's Brief at 15)(emphasis supplied).

In *Loftis v. State*, 256 Ind. 417, 269 N.E.2d 746 (1971), our supreme court had a similar issue before it. The complained of instruction in *Loftis* read as follows: " 'If you believe that all the essential elements of the crime charged have been proved beyond a reasonable doubt, you should convict the defendants.' " *Id.* at 746–747. Our supreme court held:

> the principle is established that a trial court may instruct the jury that if they

find that all the material allegations of the indictment or affidavit are proven beyond a reasonable doubt that they 'should' convict the defendants. However, such an instruction would be erroneous where the court failed to set forth all the material allegations which the State must prove before a conviction can be obtained or where the court failed to instruct the jury that they were the judges of the law as well as the facts. *Id.* at 747. Additionally, the court held "[i]n the case at bar the court uses the word 'should' which we believe is not so conclusive as to preclude the jury from an alternative course especially where they have been instructed that they are the judges of the law as well as the facts." *Id.* at 748. Consequently, the *Loftis* court found the instruction to be proper. *Id.*

Burgett argues that *Loftis* is at odds with *Holmes v. State*, 671 N.E.2d 841 (Ind. 1996), *reh'g denied, cert. denied*, 522 U.S. 849, 118 S.Ct. 137, 139 L.Ed.2d 85 (1997). *Holmes* held:

we agree that the term "should" lacks that absolute quality present in other terms, such as "must." *See Loftis v. State*, 256 Ind. 417, 269 N.E.2d 746 (1971). Nevertheless, it does adequately instruct the jury on what the law contemplates as the proper course for the jury in the event there is a failure of proof by the prosecution. Thus, the jury was properly instructed.

*Id.* at 849. With this, Burgett argues that this holding demonstrates that "should" is equivalent to "must." We disagree. *Holmes* essentially holds that although the term "should" is similar to the term "must," it is not same, as it lacks an "absolute quality." *See id.*

In the instant case, if the jury had not been informed that it had the right to decide both the law and the facts and that it must consider the instructions as a whole, Preliminary Instruction No. 12 would have improperly invaded the province of the jury in violation of Ind. Const. Art. 1, § 19. However, the jury was informed of such, as well as all of the essential elements of attempted murder and carrying a handgun without a license. Therefore, based on the foregoing, we cannot find that the use of the term "should" in the last two sentences of Preliminary Instruction No. 12 amounts to fundamental error. The use of the term "should" instructed the jury on what the law contemplates is the proper course for the jury. *See id.* When considering the preliminary instructions as a whole, we find that Preliminary Instruction No. 12 did not absolutely require the jury to do anything. Therefore, the jury still had the right to "determine the law and the facts." *See* Ind. Const. Art. 1, § 19. Thus, Burgett has not demonstrated that the trial court committed an error that equates to a substantial blatant violation of basic principles, rendering his trial unfair. *See Geiger*, 721 N.E.2d at 895.

### III. *Prior Bad Acts*

▮▮▮▮▮ Finally, Burgett argues that the trial court erred in allowing the State to present evidence of prior bad acts. It is within the sound discretion of the trial court to admit or exclude evidence. *Hardiman v. State*, 726 N.E.2d 1201, 1203 (Ind.2000). This court will not reverse the trial court absent an abuse of that discretion. *Id.* A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts and circumstances presented. *Id.*

Evid.R. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, prepara-

tion, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Burgett maintains that the State did not provide reasonable notice of its intention to offer evidence of his prior bad acts. We disagree. In *Dixon v. State*, 712 N.E.2d 1086, 1091 (Ind.Ct.App.1999), this court held that "we recognize no 'hard and fast' rule governing the time period in which the State should respond to an appropriate request under 404(b). Rather, the circumstances of the particular case should govern whether the advance notice provided by the State to defense counsel is reasonable."

On December 4, 2000, the day of trial, the State filed its Notice of Intention to Introduce Evidence of Prior Bad Acts. Prior to the commencement of trial, the court heard arguments regarding the introduction of evidence of Burgett's prior bad acts under Evid.R. 404(b). As previously stated, the trial court recognized that it was within its discretion whether to allow the evidence and held that:

> given the election of the prosecutor who was handling this and therefore a change in the personnel in the Prosecutor's Office and also the nature of the 404(b) and the awareness on the part of defense counsel of the existence of this evidence, the Court will permit the State to offer that 404(b).

(R. 27).

■ The purpose of the notice provision, under Evid.R. 404(b), is to reduce surprise and promote the early resolution of questions of admissibility. *Dixon*, 712 N.E.2d at 1090. In the instant case, the

trial court noted that there was no danger of surprise. Defense counsel was aware of the existence of Burgett's prior bad acts and was aware of a likelihood that the State would want to use this information. The trial court also noted that the change of personnel in the prosecutor's office, due to the recent election, attributed to the delay in filing the notice. Thus, the trial court considered the circumstances of the case and decided that the notice was reasonable. *See id.* at 1091. Consequently, we cannot, based on the foregoing, find that the trial court's evidentiary ruling, with regard to the notice provision under Evid.R. 404(b), was clearly against the logic, facts and circumstances presented. *See Hardiman*, 726 N.E.2d at 1203.

■ Burgett also argues that the trial court erred in admitting evidence of his prior bad acts because the probative value of such evidence was outweighed by the prejudicial effect it had on the jury. We disagree.

■ The rationale behind Evid.R 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Monegan v. State*, 721 N.E.2d 243, 248 (Ind.1999). When a defendant objects to the admission of evidence on the grounds that it violates Evid.R. 404(b), we: (1) determine whether evidence of prior bad acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of such evidence against its prejudicial effect. *Id.*

■ Motive is always relevant in the proof of a crime. *Turner v. State*, 682 N.E.2d 491, 496 (Ind.1997). In the instant case, the prosecutor argued, and the trial court judge agreed, that Burgett's gang and drug activity were intertwined with

the alleged motive for the attempted murder of Daniels. Thus, the first prong of our test is satisfied; the evidence of Burgett's prior bad acts was relevant, as it related to motive, which is always relevant in the proof of a crime. *See Monegan,* 721 N.E.2d at 248; *Turner,* 682 N.E.2d at 496.

Additionally, we find that the second prong of our test is also satisfied. We admit that evidence of drug and gang activity could be prejudicial to a defendant. However, the test is not some prejudicial effect. To be inadmissible, the prejudicial effect of the evidence must outweigh its probative value. *See Monegan,* 721 N.E.2d at 249.

In the instant case, there were allegations that Daniels was testifying against Burgett because Burgett was associated with a man named Shug. Daniels believed that Shug killed his friend Tyreese, who was murdered two days before Daniels was shot. Tyreese's murder was allegedly drug and gang related. Yet, there were also allegations that Burgett shot Daniels because Daniels spoke to police officers about Tyreese's murder.

With this, we find that evidence of drug and gang activity was inevitable. The shooting of Tyreese, which was allegedly drug and gang related, was related to Daniels' shooting. Although there is some dispute as to how it was related, there is no dispute that it was related. Essentially, the case centered on rival gangs and retaliation. Thus, we find that the probative value of Burgett's prior bad acts, as they related to drug and gang activity and retaliation, outweighed the prejudicial effect it may have had on the jury. *See Monegan,* 721 N.E.2d at 248.

■ "The exceptions in Evid.R. 404(b) are only available when a defendant goes beyond merely denying the charged crimes and affirmatively presents a specific claim contrary to the charge." *Sundling v.*

*State,* 679 N.E.2d 988, 993 (Ind.Ct.App. 1997), *reh'g denied.* Granted, Burgett did not present any evidence at trial. However, this does not mean that he did not affirmatively present a specific claim contrary to the charge. On cross examination of Daniels, Burgett's counsel accused him of wanting "somebody to pay for Tyreese's death." (R. 116). The cross examination was laden with insinuations that Daniels was lying about who shot him because he was retaliating against the people that were involved and/or associated with the death of his friend Tyreese. Therefore, we find that Burgett did, in fact, affirmatively present a specific claim contrary to the charge of attempted murder, *i.e.* that Daniels was lying to avenge his friend's death. *See Sundling,* 679 N.E.2d at 993.

Consequently, we cannot find that the trial court's evidentiary ruling, allowing the State to present evidence of Burgett's prior bad acts under Evid.R. 404(b), was clearly against the logic, facts and circumstances presented. *See Hardiman,* 726 N.E.2d at 1203.

### CONCLUSION

Based on the foregoing, we conclude that Burgett was properly convicted of attempted murder and carrying a handgun without a license.

Affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.