ZINTER, Justice
(concurring in result).
[¶ 30.] The Court correctly concludes that Holman’s statement must be suppressed. However, I concur in result because the Court adopts sweeping statements of foreign law that are inconsistent with our jurisprudence and are unnecessary to decide this case. Ultimately, we need go no further than to hold that suppression is required because Holman’s statement was induced by the significant, false police representation that if he gave a statement he would only be charged with one felony.
[¶ 31.] I cannot join this Court’s view of the law, which it derives from the Ninth Circuit Court of Appeals in United States v. Harrison, 34 F.3d 886 (9th Cir.1994) and related state cases. See supra ¶¶ 17-18. Relying primarily on Harrison, this Court adopts the view that there is no “meaningful distinction between threats of harsher punishment and specific promises of leniency that would render the former constitutionally impermissible and the latter constitutionally firm.” Id. ¶ 18. The court gleans this view from Harrison’s language that: “both types of statements are simply different sides of the same coin: waive your rights and receive more favorable treatment versus exercise your rights and receive less favorable treatment.” Id. (citing Harrison, 34 F.3d at 891).
[¶ 32.] However, this Court fails to mention that the Ninth Circuit immediate *460 ly qualified the foregoing quotation by recognizing two circumstances distinguishing threats from promises of leniency. The Ninth Circuit first noted that a defendant may benefit from learning about the possibility of a reduced sentence. Harrison, 34 F.3d at 891. The Ninth Circuit also noted that promises to recommend leniency are generally not sufficiently compelling to overbear a defendant’s will. Id. (citing United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988)).
[¶ 33.] Therefore, there are meaningful distinctions between promises of leniency and threats of harsher punishment. As this Court recently recognized:
Police may legitimately tell a suspect that cooperation will be passed on to the authorities and may increase the likelihood of leniency, but threatening to inform the prosecutor or the judge of a suspect’s refusal to cooperate violates the Fifth Amendment right to remain silent.
State v. Tuttle, 2002 SD 94, ¶ 32, 650 N.W.2d 20, 36.
[¶ 34.] I also decline to join the Court’s analysis because it fails to give sufficient weight to the fact that Holman initiated the request for leniency, asking “what kind of deal could [he] get if he cooperated” by giving his statement. This factor is highly significant because courts recognize that statements are voluntary when it is the defendant that requests leniency in return for giving a statement. See State v. Richardson, 316 N.C. 594, 604, 342 S.E.2d 823, 831 (1986) (noting that “[p]romises or other statements indicating to an accused that he will receive some benefit if he confesses do not render his confession involuntary when made in response to a solicitation by the accused”); Drew v. State, 503 N.E.2d 613, 617 (Ind.1987) (noting “the defendant had already manifested the propensity and willingness to make a voluntary statement before the occurrence of any action on the part of the State” because the promise of immunity was in “response to a specific request by the defendant, who solicited the promises as a precondition for making a full statement”); State v. Hutson, 537 S.W.2d 809, 813-14 (Mo.Ct.App.1976) (concluding that the confession was voluntary under the totality of the circumstances, including the fact that the defendant initiated the plea negotiations).
[¶ 35.] Finally, the Court’s adoption of conflicting foreign law is unnecessary because, under South Dakota law, the false police promise alone requires suppression. I agree with the Court that the significant, false promise of only being charged with one felony wás made to get Holman to make his statement. Furthermore, that false promise was not harmless error. Therefore, as the Court acknowledges, under State v. Stanga, 2000 SD 129, 617 N.W.2d 486, Holman’s statement should be suppressed.[3]
[¶ 36.] GILBERTSON, Chief Justice, joins this special writing.

. See also United States v. Pinto, 671 F.Supp. 41, 60 (D.Me.1987) (holding that "[cjivilized standards of evidence do not permit the use of statements made in response to a promise which was false when made and which was tacitly altered or rescinded after defendant had met what he reasonably understood to be the terms of the original promise”); United States v. Goldstein, 611 F.Supp. 626, 632 (N.D.Ill.1985) (stating that a confession is involuntary and unconstitutional when government deliberately misrepresents the conse *461 quences of a confession); Tippitt v. State, 285 Ark. 294, 295, 686 S.W.2d 420, 421 (1985) (holding that "[a] false promise which misleads an accused renders his statement involuntary”) (citing Davis v. State, 275 Ark. 264, 267, 630 S.W.2d 1, 2 (1982)) (stating "[i]f a police official makes a false promise which misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been voluntarily, knowingly and intelligently made”) (overruled on other grounds by Grillot v. State, 353 Ark. 294, 107 S.W.3d 136 (2003)); State v. McDermott, 131 N.H. 495, 501, 554 A.2d 1302, 1306 (1989) (noting that allowing the government to revoke its promise after obtaining incriminating information "obtained in reliance on that promise would be to sanction governmental deception in a manner violating due process”).