# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ERIC C. BOHNET**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 18 2013, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALEX CARRILLO, | ) | |
| | ) | |
| Appellant-Defendant/Cross-Appellee, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1112-PC-1209 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff/Cross-Appellant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
The Honorable John J. Boyce, Commissioner
Cause No. 49F15-0605-PC-81380

**February 18, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In 2006, Alex Carrillo, a citizen of Ecuador who immigrated to the United States when he was one year old, pled guilty to resisting law enforcement and operating a vehicle while intoxicated. Carrillo now appeals the denial of his petition for post-conviction relief ("PCR"), in which he argued that his guilty plea counsel provided ineffective assistance by failing to advise him that there could be negative immigration consequences as a result of his guilty plea. The post-conviction court concluded that because Carrillo's attorney did not know, and had no reason to suspect, that Carrillo was not a native-born citizen of the United States, his attorney's performance was not deficient. On appeal, Carrillo argues that the post-conviction court improperly considered his attorney's knowledge of his noncitizen status in determining whether he received ineffective assistance. We conclude that the post-conviction court properly considered Carrillo's attorney's knowledge in assessing whether his attorney's performance was deficient, and that the court did not err in concluding that Carrillo failed to carry his burden to show that he received ineffective assistance of counsel. Therefore, we affirm the denial of Carrillo's PCR petition.[1]

**Facts and Procedural History**

Carrillo was born in Ecuador. In 1965, during his first year of life, he immigrated to the United States and has lived here ever since. Carrillo remains a citizen of Ecuador.

---

[1] Because of our resolution of Carrillo's claim, we need not address the State's cross-appeal, in which it argues that the post-conviction court erred in finding that Carrillo suffered prejudice from his attorney's failure to advise him of the risk of deportation arising from his guilty plea.

On May 6, 2006, police observed Carrillo commit a traffic offense while driving in Marion County. Police attempted to pull over Carrillo, but he did not stop. Police pursued him, using emergency equipment. Carrillo eventually stopped. Police noticed that Carrillo had slurred speech, bloodshot and glassy eyes, poor dexterity, and unsteady balance. The State charged Carrillo with class D felony resisting law enforcement, class A misdemeanor operating a vehicle while intoxicated, class A misdemeanor driving with a suspended license, and class B misdemeanor public intoxication.

On October 12, 2006, Carrillo pled guilty to class D felony resisting law enforcement and class A misdemeanor operating a vehicle while intoxicated. Pursuant to the plea agreement, Carrillo would receive a 365-day sentence, all suspended with credit for time served, and a ninety-day suspension of his driver's license, and the parties were free to argue whether alternative misdemeanor sentencing should be applied to the class D felony. The State dismissed the remaining charges. The trial court accepted Carrillo's guilty plea, sentenced him to 365 days in jail, with credit for six days served and the remainder suspended to probation, and entered judgment of conviction for resisting law enforcement as a class A misdemeanor.

On April 11, 2011, Carrillo was detained by federal immigration authorities. He faces deportation proceedings based in part upon his conviction for resisting law enforcement.[2]

---

[2] The Immigration and Nationality Act provides that an alien is deportable who is convicted of an aggravated felony. 8 U.S.C. § 1227 (a)(2)(A)(iii). Carrillo's conviction for resisting law enforcement is considered an aggravated felony because it is a crime of violence for which he received a sentence of a year or more. *See* 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" as a "crime of violence" for which the term of imprisonment is at least one year); 18 U.S.C.A. § 16 (defining "crime of violence").

On May 9, 2011, Carrillo filed a PCR petition alleging that his guilty plea counsel failed to provide effective assistance of counsel by failing to advise him that pleading guilty could adversely affect his immigration status and could result in deportation. Following a hearing, the post-conviction court issued its judgment, concluding that Carrillo established that prejudice resulted from counsel's failure to advise him of the possible deportation consequences of his guilty plea.[3] Nevertheless, the post-conviction court denied relief because it concluded the Carrillo failed to establish that counsel's failure to advise him of the risk of deportation constituted ineffective assistance based on the following considerations:

> i.    As a threshold matter, a petitioner must first prove trial counsel knew she or he was not a citizen of the United States. "Whether [advice of counsel] is deficient in a given case is fact sensitive and turns on a number of factors. These presumably include the <u>knowledge of the lawyer of the client's status as an alien</u>." *Sial v. State*, 862 N.E.2d 702 (Ind. Ct. App. 2007), citing *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001). (emphasis added)

> ….

> 22.    Throughout [Carrillo's] testimony the court observed that neither Mr. Carrillo's grammar, syntax, or pronunciation gave any hint he was not a native born [United States] citizen. The fact of a Spanish surname,

---

[3] The post-conviction court concluded that

> At the time of the guilty plea hearing Mr. Carrillo had lived in the United States for at least forty years. He had married and was the father of five children, three of whom were still minors. He was firmly established in the United States and had no family or friends in his native country of Ecuador. These facts establish the prejudice prong of *Strickland* analysis[.]

Appellant's App. at 23. In contrast, in a companion case that we also decide today, *Carrillo v. State*, No. 49A05-1108-PC-437 (Ind. Ct. App. Feb. 18, 2013), Carrillo failed to provide evidence of the ages of his children at the guilty plea hearing. That was an important omission in that case due to the many years, nearly fourteen, between his guilty plea and the post-conviction hearing.

alone, was insufficient to cause him to appear to be anything other than a native born citizen of this land rich in national and cultural influences.

23. In his Petition, Mr. Carrillo claims; "He grew up in the United States, attended schools in the United States, and culturally considers himself to be an American." Having observed his testimony, the Court finds Mr. Carrillo's self-description to be entirely accurate. Nothing about the petitioner's speech or mannerisms suggested he was anything other than a native of the [United States].

24. Neither party presented any evidence that, at the time of Mr. Carrillo's guilty plea hearing, an objective standard of reasonableness or a prevailing professional norm demanded that an attorney inquire as to the immigration status of every client regardless of whether any factors existed to indicate that immigration consequences may be relevant to that client's representation.

25. Thus, this court must find Mr. Carrillo has failed to prove this threshold matter of knowledge of his immigration status. Unlike the counsel in *Padilla*,[4] [Carrillo's counsel] had no knowledge of, nor any reason to inquire about, his client's immigration status. This court cannot now impose upon Mr. Carrillo's counsel a duty to know facts withheld by his client, even inadvertently, where no independent indicators existed to suggest to counsel that his client was not a citizen of the United States.

Appellant's App. at 20, 22-23.

**Discussion and Decision**

Carrillo appeals from the denial of his PCR petition.

---

4 In *Padilla v. Kentucky*, 130 S. Ct. 1473, 1483 (2010), the Supreme Court held that counsel's performance was deficient for failing to advise Padilla that his plea of guilty to drug distribution made him subject to automatic deportation, where the consequences of Padilla's plea could easily be determined from reading the relevant immigration statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect. The *Padilla* court also held more broadly that "counsel must inform her client whether his plea carries a risk of deportation." *Id*. at 1486. The *Padilla* court also clarified, "When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice ALITO), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. at 1483.

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. …. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006) (citations omitted).

Carrillo contends that the post-conviction court erred in finding that he was not denied the effective assistance of trial counsel. "The petitioner for post-conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence." *State v. Holmes*, 728 N.E.2d 164, 168 (Ind. 2000) (citing Ind. Post-Conviction Rule 1(5)). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *cert. denied* (2001). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Prejudice results where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). "Failure to satisfy either prong will cause the claim to fail." *French*, 778 N.E.2d at 824. In this case, we resolve Carrillo's claim based on the deficient performance prong.

Carrillo argues that his attorney's performance was deficient because he failed to inform Carrillo that pleading guilty could have adverse immigration consequences. Specifically, he contends that "[c]ontrary to the trial court's holding, Carrillo was not required to show that his attorney knew that he was a noncitizen or to produce evidence establishing a prevailing professional norm that an attorney make such an inquiry." Appellant's Br. at 7.[5] Carrillo asserts that the post-conviction court improperly relied on dicta from *Sial*, 862 N.E.2d at 705, to support its consideration of his counsel's knowledge of Carrillo's noncitizen status as a factor in its ineffective assistance analysis.

The portion of *Sial* to which Carrillo refers quoted our supreme court's opinion in *Segura*, 749 N.E.2d 496. *Segura* was the first time our supreme court addressed whether counsel's failure to advise a client that pleading guilty may carry the risk of deportation is deficient performance. Before *Segura*, another panel of this court had held that "the consequence of deportation, whether [labeled] collateral or not, is of sufficient seriousness that it constitutes ineffective assistance for an attorney to fail to advise a noncitizen defendant of the deportation consequences of a guilty plea." *Williams v. State*, 641 N.E.2d 44, 49 (Ind.

_____

[5] Carrillo failed to include a table of contents and table of authorities in his appellant's brief in violation of Indiana Appellate Rule 46(A)(1) and (2).

Ct. App. 1994) *trans. denied* (2005).[6] The *Segura* court agreed with *Williams* that counsel's failure to advise regarding possible adverse immigration consequences could constitute deficient performance "under some circumstances." 749 N.E.2d at 500. Specifically, the *Segura* court stated:

> [T]he failure to advise of the consequence of deportation can, under some circumstances, constitute deficient performance. Otherwise stated, we cannot say that this failure as a matter of law never constitutes deficient performance. Whether it is deficient in a given case is fact sensitive and turns on a number of factors. These presumably include the knowledge of the lawyer of the client's status as an alien, the client's familiarity with the consequences of conviction, the severity of criminal penal consequences, and the likely subsequent effects of deportation. Other factors undoubtedly will be relevant in given circumstances.

*Id*.

Ultimately, the *Segura* court affirmed the denial of the defendant's PCR petition on prejudice grounds and therefore did not have to decide whether counsel's performance was deficient.[7] Nevertheless, our supreme court clearly meant to provide guidance in future cases with regard to determining whether a particular counsel's performance was deficient.[8]

---

[6] In *Williams*, the court concluded that the attorneys' performances were not deficient because "a sufficient showing was made that the petitioners were put on notice by their attorneys regarding the deportation consequences of their guilty pleas." 641 N.E.2d at 51.

[7] Likewise in *Sial*, deficient performance was not at issue because the defendant's attorney admitted at the post-conviction hearing that he failed to provide effective assistance because he did not advise his client about the immigration consequence. 862 N.E.2d at 705.

[8] Since *Segura*, Indiana courts have yet to analyze the deficient performance prong as part of an ineffective assistance claim based on failure to advise of adverse immigration consequences. *See Suarez v. State*, 967 N.E.2d 552, 557 (Ind. Ct. App. 2012) (affirming denial of PCR petition based on failure to establish prejudice), *trans. pending*; *Gulzar v. State*, 971 N.E.2d 1258, 1262 (Ind. Ct. App. 2012) (same), *trans. pending*; *Clarke v. State*, 974 N.E.2d 562, 568 (Ind. Ct. App. 2012) (same); *Trujillo v. State*, 962 N.E.2d 110, 114, 116 (Ind. Ct. App. 2011) (same); *State v. Bonilla*, 957 N.E.2d 682, 685 (Ind. Ct. App. 2011) (reversing grant of PCR petition based on failure to show prejudice).

Carrillo argues that counsel's knowledge of a client's noncitizen status should not be part of the deficient performance analysis because the consequences of deportation are so severe, citing *Williams* for the statement that "deportation may be a penalty more severe than a prison sentence." 641 N.E.2d at 48. It seems clear that the *Segura* court was fully cognizant of the harshness of deportation given its agreement with *Williams*. Carrillo fails to persuade us that we should discount the instruction provided by our supreme court in *Segura.*[9] Accordingly, we will follow *Segura*'s direction in considering counsel's knowledge of a client's noncitizen status as a factor in assessing deficient performance.[10]

Here, it is undisputed that counsel had no knowledge that Carrillo was not a native-born United States citizen. Carrillo did not inform counsel of his resident alien status. Having lived here since he was one year old, Carrillo acted and spoke like a native-born citizen. There was nothing about Carrillo that would have made his counsel suspect that he was not a United States citizen. There are no circumstances that would have indicated that immigration consequences would have been relevant to Carrillo's decision to plead guilty.

Carrillo argues that "this Court should explicitly hold that the duty to inform criminal clients of immigration consequences does not depend upon the attorney's knowledge or

---

[9] Carrillo urges us to apply the holding in *Padilla*. We need not address the retroactive application of *Padilla*, as its holding is consistent with *Segura* and *Williams*. *See State v. Bonilla*, 957 N.E.2d 682, 684 n.2 (Ind. Ct. App. 2011) (declining to address retroactive application of *Padilla* because it was consistent with Indiana decisions that predated it).

[10] The post-conviction court's framework for its ineffective assistance analysis is different than what we think the *Segura* court intended, in that the post-conviction court considered knowledge of noncitizen status as a third prong, or a threshold matter to be determined before addressing whether counsel failed to describe or misdescribe the adverse immigration consequences attaching to the guilty plea. We think knowledge of the client's status is part of the deficient performance analysis, not a prelude to it. In this case, the post-conviction court's choice of framework did not affect its decision or ours.

suspicions of his client's citizenship." Appellant's Br. at 10. In *Clarke v. State*, 974 N.E.2d

562 (Ind. Ct. App. 2012), another panel of this Court observed,

> The State asks us to focus upon the clause, "the knowledge of the lawyer of the client's status as an alien" [from *Segura*] as one of the facts a court should consider when deciding whether the failure to advise constitutes deficient performance. We need not address this question in the present case because the post-conviction court's decision is affirmable on other grounds. We note, however, that this issue is percolating in other states and the early trend seems to be in favor of imposing a duty on criminal defense attorneys to ascertain the citizenship status of their clients. *See*, *e.g.*, *Commonwealth v. Clarke*, 460 Mass. 30, 949 N.E.2d 892, 905 (2011) ("[t]hat the defendant's counsel failed to ascertain that the defendant was not a United States citizen may be sufficient to satisfy the first prong of the *Saferian* standard because effective representation requires counsel to gather at least enough personal information to represent him"); *State v. Paredez*, 136 N.M. 533, 101 P.3d 799, 805 (2004) ("[w]e hold that criminal defense attorneys are obligated to determine the immigration status of their clients. If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain"); *Salazar v. State*, 361 S.W.3d 99, 102 (Tex. App. 2011) (the argument that there was no deficient performance because there was no indication the attorney knew the defendant had less than five years of legal resident status "is not persuasive because the counsel's duty to give correct legal advice where the consequences of a guilty plea with respect to deportation are clear carries with it the obligation to investigate what the deportation consequences to the client would be given the client's individual circumstances"); *but see State v. Stephens*, 46 Kan. App. 2d 853, 265 P.3d 574, 577 (2011), *review denied* ("[t]he *Padilla* Court did not extend its ruling to obligate defense counsel to correctly predict a client's probation or prison sentence, nor did the *Padilla* Court impose upon counsel the duty to investigate the citizenship or immigration status of every client in a criminal case).

*Id*. at 568-69.

Given the State's interest in safeguarding the integrity of its criminal convictions, we

think that it would be proper for the judiciary to play a part in ensuring that noncitizen

defendants are adequately advised of the immigration consequences of guilty pleas. The

2009 edition of the Indiana Criminal Benchbook, developed by the Indiana Judicial Center and distributed to trial judges in early 2010, began recommending that the trial court's guilty plea dialogue with a criminal defendant include a query as to whether he or she is a United States citizen, and if the answer is no, to follow up with questions regarding whether the possibility of deportation had been discussed with counsel. Ind. Crim. Benchbook §§ 50.20.050, 50.70.300, 50.50.350, 50.50.400 (2011). If the defendant has not received immigration advice, the Benchbook Committee recommends that the judge continue the hearing to allow the defendant to have such a discussion. *Id.*, §§ 50.70.300, 50.50.350, 50.50.400.

Even with these safeguards, we caution that it would still be incumbent upon the defendant's attorney to accurately inform the noncitizen defendant of the deportation consequences of pleading guilty where they can be easily determined from reading the relevant immigration statute. *Padilla v. Kentucky*, 130 S. Ct. at 1483. "When the law is not succinct and straightforward …, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. Hopefully, this procedure will prospectively eliminate a situation like this where the defendant's counsel is unaware of the defendant's noncitizen status.

However, the question before us is whether the prevailing professional norms in 2006 required attorneys to ask every client whether he or she was a United States citizen. Carrillo has failed to persuade us that the prevailing professional norms in 2006 required attorneys to

11

do so.[11]  Therefore, we conclude that Carrillo's counsel did not provide deficient performance in failing to advise him regarding the risk of deportation where counsel did not know, and had no reason to suspect, that Carrillo was not a native-born citizen of the United States.[12] Accordingly, we affirm the denial of post-conviction relief.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[11]  If knowledge of the client's noncitizen status remains a factor in assessing whether counsel's performance was deficient, Carrillo asks us to hold that his attorney was deficient due to the severity of the impact on Carrillo, the relatively light penal consequences at stake, and Carrillo's belonging to an ethnic group that includes relatively high percentages of immigrants. Appellant's App. at 10.  He has waived this argument by failing to support it with cogent reasoning. *See Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); Ind. Appellate Rule 46(A)(8) ("The argument must contain the contentions of the appellant on the issues presented supported by cogent reasoning.").

[12]  We reject Carrillo's contention that his surname, standing alone, was sufficient to put his attorney on notice that he might not be a United States citizen.