# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**WILLIAM P. McCALL, III**
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERTO BARAJAS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1208-PC-387 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Steven M. Fleece, Senior Judge
Cause No. 10C02-1201-PC-2

**May 10, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Roberto Barajas appeals the post-conviction court's denial of his petition for post-conviction relief. Barajas argues that his trial counsel was ineffective for failing to explain the deportation consequences of his guilty plea to Class D felony possession of cocaine. Concluding that Barajas has failed to demonstrate prejudice in light of the trial court's advisements at his guilty-plea hearing, we affirm the post-conviction court.

## Facts and Procedural History

On May 30, 2006, Barajas, who was not a citizen of the United States and only spoke "a little bit of English," appeared before the trial court for his guilty-plea hearing. Def.'s Ex. A, p. 4. Barajas had entered into a plea agreement with the State in which he agreed to plead guilty to Class D felony possession of cocaine; in exchange, the State agreed to dismiss a dealing-in-cocaine charge.[1] The plea agreement was translated into Spanish for Barajas. During the guilty-plea hearing, which was also translated into Spanish for Barajas by Ramona Sharp, a regular translator for the court who Barajas said that he understood, the trial court asked Barajas whether he was a citizen of the United States. Barajas said no. The trial court then advised Barajas as follows:

> Do you understand, sir, that your plea of guilty today may cause you consequences if you are not a United States citizen, especially if you are not a legal resident of the . . . United States. Are you aware of that?

*Id.* at 9. When Barajas asked for further explanation, the trial court continued, "Like you could be deported if the Department of Immigration would find out that you had pled guilty to any criminal offenses, particularly felonies." *Id.* at 10. Barajas responded:

---

[1] The record does not reflect what felony level the dealing charge was or the facts underlying the charges.

2

You know what, I really need to talk to that about, to an attorney about that. But really I didn't come here to talk about Immigration. But really I need, you know, if this is the case . . . you know, a case against the State but not against Immigration with it.

*Id.* (formatting altered). The trial court responded:

No. This is not an Immigration case. But as a consequence of your pleading guilty today there may be other penalties that might [a]ffect you because of pleading guilty here today. And I, well, like I said, if Immigration would find out that you pled guilty there's a possibility that you could be deported. And I just want to make sure that you know about these possibilities before you enter any plea of guilty today. If you wish to take time to talk to an attorney about that then the Court will reschedule this for jury trial and put it back on the trial docket. But I want you to talk to your attorney first to figure out what you both feel is in your best interest.

*Id.* at 10-11. Barajas acknowledged that "we might not be able to finish this case" because "I was supposed to plead guilty to this case." *Id.* at 11. The trial court judge then asked Barajas if he would like her to leave the courtroom so that they could talk privately. Trial counsel said that he needed a few minutes with Barajas. *Id.* After a break, the trial court went back on the record. The trial court then asked Barajas if he "wish[ed] to go ahead and complete the plea today," to which Barajas said yes. *Id.* at 12. Barajas then pled guilty to Class D felony possession of cocaine. Barajas said that trial counsel had done a good job representing him. *Id.* at 20. The trial court accepted Barajas' guilty plea and sentenced him to one and a half years suspended to probation. Barajas successfully completed his probation.

In January 2012, Barajas, represented by counsel, filed a petition for post-conviction relief alleging that his trial counsel was ineffective for failing to advise him of the deportation consequences of pleading guilty. The post-conviction court held hearings over the course of two days in March and April 2012. On the first day, Barajas attempted

3

to call as a witness Ramona Sharp, who interpreted for Barajas during his guilty-plea hearing, but she did not appear.[2] The post-conviction court, a senior judge, noted that he was familiar with Sharp because he had used her in his court "for many years" when he was presiding judge. P-C Tr. p. 53. The court also noted that Sharp was from Cuba, had extensively practiced as an interpreter in both Indiana and Kentucky, and was one of the first interpreters in their judicial district to become certified by the Indiana Supreme Court in 2008. *Id.* at 53-54; Appellant's App. p. 19. On the second day, Barajas did not attempt to call Sharp as a witness, explaining to the court that he no longer considered her testimony necessary. Appellant's App. p. 20.

Barajas testified that at some point after his guilty plea, most likely in 2011, he was taken into custody by immigration authorities. P-C Tr. p. 72-73. Barajas consulted an immigration attorney in an attempt to obtain United States citizenship, at which time the immigration attorney advised him that his May 2006 conviction was the reason for his imminent removal from the United States. *Id.* at 72-74. In addition, Barajas testified that before entering his guilty plea, he met with trial counsel two or three times, but counsel "never explained to me that this could [a]ffect my Immigration status or that I could be deported. He never explained that to me." *Id.* at 79. And, Barajas maintained, "[I was] not told that this would be an offense for which [I] would be deported." *Id.* at 80. As for the break during the guilty-plea hearing when the judge left the courtroom, Barajas alleged that "we really didn't talk about anything. [Trial counsel] said you're going to plead guilty so that we can get this over with." *Id.* at 81. Barajas alleged that there was

---

[2] Sharp did not interpret for Barajas at his post-conviction-relief hearings; rather, two different people interpreted for Barajas on each day of the hearings.

4

no discussion off the record that by entering his guilty plea he would be deported pursuant to federal law. *Id.* at 81, 84. Barajas said that if he would have known these things, he would have never pled guilty. *Id.* at 85-86. Finally, Barajas alleged that Sharp did not interpret everything that the judge said. *Id.* at 82-83.

Trial counsel, on the other hand, testified to a different version of events at the post-conviction-relief hearing. Trial counsel testified that he knew Barajas was not a United States citizen and although he did not recall his exact conversations with Barajas, he assumed that he would have given Barajas a "general advisement," just like he would have with his other non-citizen Hispanic clients. *Id.* at 17-18; *see also id.* at 44 (trial counsel testified that approximately 3% of his clientele was Hispanic and that the number was slightly higher when he represented Barajas because his receptionist at the time spoke Spanish). That advisement would have included that a guilty plea to an aggravated felony or to a crime calling for a sentence of one year or more (even if the time was suspended) would make him eligible for deportation. *Id.* at 45. Trial counsel would also advise his non-citizen Hispanic clients to seek immigration counsel. *Id.* As for the break during the guilty-plea hearing when the judge left the courtroom, although trial counsel did not have an independent recollection of their private meeting, trial counsel said he would have reiterated his general advisement to Barajas. *Id.* at 29, 47, 48. But trial counsel would not have referred to any United States Code provisions in his general advisement. *Id.* at 29-30, 34. Trial counsel denied forcing Barajas to plead guilty. *Id.* at 48-49, 51.

5

In May 2012, the post-conviction court issued an order denying Barajas' petition for post-conviction relief. Appellant's App. p. 19-21. In pertinent part, the post-conviction court found that the trial court "did everything reasonable and proper to dispel th[e] misconception [concerning deportation consequences of a guilty plea] and [Barajas] ignored her warnings at his peril. Willful disregard of advisements is no basis for post-conviction relief." *Id.* at 21. Barajas filed a motion to correct errors, which the court denied.

Barajas now appeals.

**Discussion and Decision**

Barajas contends that the post-conviction court erred in denying his petition for post-conviction relief. Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). Post-conviction proceedings do not offer a super-appeal; "[r]ather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules." *Wilkes*, 984 N.E.2d at 1240 (quotation omitted). Those grounds are limited to "issues that were not known at the time of the original trial or that were not available on direct appeal." *Id.* (quotation omitted).

Because Barajas is appealing from the denial of post-conviction relief, he is appealing from a negative judgment and bears the burden of proof. *Id.* Thus, Barajas "must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision." *Id.* "In other words,

6

[Barajas] must convince this Court that there is *no* way within the law that the court below could have reached the decision it did." *Id.* (quotation omitted). We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law. *Id.* (citing Ind. Trial Rule 52(A)).

Barajas argues that his trial counsel was ineffective for failing to explain the deportation consequences of his guilty plea. Appellant's Br. p. 6. Claims of ineffective assistance of counsel are evaluated using the *Strickland* standard articulated by the United States Supreme Court. *Wilkes*, 984 N.E.2d at 1240. To establish ineffective assistance of counsel, a defendant must demonstrate to the post-conviction court that (1) counsel performed deficiently based upon prevailing professional norms and (2) the deficiency resulted in prejudice to the defendant. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

This standard first asks whether, "considering all the circumstances," counsel's actions were "reasonable[ ] under prevailing professional norms." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Second, even if counsel's performance is deficient, the defendant must demonstrate that counsel's deficient performance actually prejudiced the defense. *Wilkes*, 984 N.E.2d at 1241. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Landis v. State*, 749 N.E.2d 1130, 1134 (Ind. 2001).

Barajas claims both deficient performance under *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), and prejudice. In *Padilla*, the United States Supreme Court held, "When the [immigration] law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . . , the duty to give correct advice is equally clear." *Id.* at 1483 (footnote omitted).[3] The State counters that even assuming trial counsel performed below prevailing professional norms, Barajas was not prejudiced because the trial court properly advised him that he could be deported as a result of his guilty plea to Class D felony possession of cocaine. In its order, the post-conviction court in essence found no prejudice, concluding that "the sentencing judge did everything reasonable and proper to dispel th[e] misconception [concerning deportation consequences of a guilty plea] and petitioner ignored her warnings at his peril. Willful disregard of advisements is no basis for post-conviction relief." Appellant's App. p. 21.

The record shows that Sharp, a regular translator for the court, translated the guilty-plea hearing into Spanish for Barajas. Barajas told the trial court that he understood Sharp, and he made no comment on the record about his inability to understand the proceedings. Def.'s Ex. A, p. 4. When the trial court asked Barajas

---

[3] The State argues that *Padilla* does not apply retroactively to this case. Even though we resolve this case on prejudice, we note that retroactivity is not an issue as *Padilla* is consistent with Indiana decisions that predate it. *See Carrillo v. State*, 982 N.E.2d 468, 473 n.9 (Ind. Ct. App. 2013); *see also Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001) ("[T]he failure to advise of the consequence of deportation can, under some circumstances, constitute deficient performance.").

whether he was a United States citizen, he said no. The trial court judge then carefully advised Barajas:

> Do you understand, sir, that your plea of guilty today may cause you consequences if you are not a United States citizen, especially if you are not a legal resident of the . . . United States. Are you aware of that?

*Id.* at 9. When Barajas asked for further explanation, the trial court continued, "Like you could be deported if the Department of Immigration would find out that you had pled guilty to any criminal offenses, particularly felonies." *Id.* at 10. Barajas responded:

> You know what, I really need to talk to that about, to an attorney about that. But really I didn't come here to talk about Immigration. But really I need, you know, if this is the case . . . you know, a case against the State but not against Immigration with it.

*Id.* (formatting altered). The trial court responded:

> No. This is not an Immigration case. But as a consequence of your pleading guilty today there may be other penalties that might [a]ffect you because of pleading guilty here today. And I, well, like I said, if Immigration would find out that you pled guilty there's a possibility that you could be deported. And I just want to make sure that you know about these possibilities before you enter any plea of guilty today. If you wish to take time to talk to an attorney about that then the Court will reschedule this for jury trial and put it back on the trial docket. But I want you to talk to your attorney first to figure out what you both feel is in your best interest.

*Id.* at 10-11. Barajas acknowledged that "we might not be able to finish this case" because "I was supposed to plead guilty to this case." *Id.* at 11. The trial court then asked Barajas if he would like her to leave the courtroom so that they could talk privately. Trial counsel said that he needed a few minutes with Barajas. *Id.* After a break, the trial court went back on the record. The trial court then asked Barajas if he "wish[ed] to go ahead and complete the plea today," to which Barajas said yes. *Id.* at 12.

9

Barajas then pled guilty to Class D felony possession of cocaine. Barajas said that trial counsel had done a good job representing him. *Id.* at 20.

Even assuming that trial counsel performed below prevailing professional norms by not explaining to Barajas the potential immigration consequences of his guilty plea, we conclude that Barajas was not prejudiced because the trial court explained the consequences to him. Because Barajas was told that his guilty plea could result in deportation, we do not need to analyze the issue of whether competent representation would have caused Barajas not to enter a plea. *See Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001). To the extent that Barajas argues that Sharp did not translate everything that the judge said at his guilty-plea hearing, we note that he did not call Sharp as a witness on the second day of his post-conviction-relief hearing. Moreover, when the State asked Barajas if he recalled having a conversation with the judge "about having consequences if you're not a United States citizen if you ple[a]d guilty," Barajas responded:

> She told me something I remember, what was it she told me. I don't remember. She told me something about that, that the Judge said that but I don't remember what my answer was to her.

P-C Tr. p. 89-90. This belies Barajas' claim that he did not understand the guilty-plea proceedings. Thus, the post-conviction court was free to make a credibility determination on this issue.[4] We therefore affirm the post-conviction court.

---

[4] In its order denying Barajas post-conviction relief, the post-conviction court found:

The court indicated it would, to the extent allowable by law, take judicial notice of these qualifications [of Sharp] and would, at any rate, be conscious of them if required to determine the credibility of any claims of incompetent translation.

Appellant's App. p. 20. The post-conviction court went on to note that Barajas did not call Sharp as a witness on the second day of his post-conviction-relief hearing because he "no longer considered her testimony necessary." *Id.*

Affirmed.

KIRSCH, J., and PYLE, J., concur.