## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 21 2015, 10:14 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Javon Thomas,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 21, 2015<br><br>Court of Appeals Case No.<br>71A04-1408-CR-362<br><br>Appeal from the St. Joseph Superior Court.<br>The Honorable John M. Marnocha, Judge.<br>Cause No. 71D02-1302-MR-6 |

**Baker, Judge.**

[1] Javon Thomas appeals his conviction for Murder,[1] a felony, the sentence enhancement for criminal gang affiliation, and the sentence imposed by the trial court. Thomas raises the following arguments: (1) the trial court erroneously admitted certain evidence; (2) there is insufficient evidence supporting the sentence enhancement for criminal gang affiliation; (3) the sentence is inappropriate in light of the nature of the offense and his character; and (4) the trial court erred by ordering the sentence in this case to be served consecutively to a sentence Thomas is serving in a federal case. Finding no error, we affirm.

## Facts

[2] In 2010, Thomas was a member and leader of a gang called "Cash Out Boyz." William Williams was a leader of a rival gang called "187." The relationship between these two gangs was so violent that if members of one gang saw members of the other, they would shoot at each other.

[3] On October 31, 2010, Marcia Garcia hosted a party in South Bend for approximately fifty people. She was so worried about gang violence that she patted down each party attendant for weapons before they entered. Williams went to Garcia's party. Someone called Thomas and informed him that Williams was at the party, so Thomas and Brison Williams (Brison), a fellow gang member, asked a friend to drive them to the party. The friend dropped

[1] Ind. Code § 35-42-1-1.

them off a few houses away from the party, and they told her to drive around the corner to wait for them.

[4] Thomas and Brison hid near some bushes adjacent to Garcia's home. Sometime after midnight, Williams and another partygoer exited the house. There were multiple people standing outside in the vicinity. Thomas and Brison then emerged from hiding and began shooting at Williams. Williams pushed the person to whom he was talking to the ground between two parked cars and then ran down the street. As he fled, Williams was struck in the back and killed by a single .32-caliber bullet. He died on the scene. Thomas and Brison had fired approximately four to seven shots with a .32-caliber semi-automatic handgun and a .44-caliber revolver.

[5] After the shooting, Thomas and Brison returned to their friend's vehicle; it had been less than five minutes since she had dropped them off at the party. She drove them home, and Thomas told the friend to just say that she "didn't know anything" if she was asked about the incident. Tr. p. 409. Thomas told several people that he had killed Williams in retaliation for Williams's involvement in a shooting a day or two earlier. Thomas bragged that he had fired the shot that killed Williams and began to call himself "J-Murder." *Id.* at 433-34, 462-63, 464, 544. He also bragged that since the murder, people were afraid of Cash Out Boyz. At trial, seven witnesses testified that Thomas had admitted shooting Williams.

[6] On February 19, 2013, the State charged Thomas with murder. On August 12, 2013, the State sought to have Thomas's sentence enhanced because he is a member of a criminal gang and committed the crime at the direction of or in affiliation with the criminal gang. On June 11, 2014, a jury found Thomas guilty as charged and, after a second phase of the trial, found that the State had proved that the criminal gang sentencing enhancement applied beyond a reasonable doubt.

[7] On July 9, 2014, the trial court sentenced Thomas to the advisory term of fifty-five years, and enhanced that sentence by another fifty-five years as required by the criminal gang enhancement. The trial court also ordered that this sentence be served consecutively to a sentence Thomas was serving for a separate federal crime. Thomas now appeals.

# I.  Admission of Evidence

[8] Thomas first argues that the trial court erred by admitting evidence of the gang membership of Thomas and Williams at trial. The admission of evidence is within the discretion of the trial court, and we will reverse only if the trial court's decision was clearly against the logic and effect of the facts and circumstances before it. *Lanham v. State*, 937 N.E.2d 419, 421-22 (Ind. Ct. App. 2010).

[9] Prior to trial, Thomas filed a motion in limine seeking to exclude any testimony about his own or Williams's gang affiliation. The trial court denied the motion. At trial, Thomas objected to Garcia's testimony about Williams's gang

affiliation on the basis of Evidence Rule 403. The objection was overruled. Thomas did not object to another witness's testimony about Thomas's gang affiliation. It is well established that "motions in limine do not preserve errors for appeal; the defendant must reassert his objection at trial contemporaneously with the introduction of the evidence." *White v. State*, 687 N.E.2d 178, 179 (Ind. 1997). Consequently, Thomas has waived any argument with respect to evidence related to his own gang affiliation. Furthermore, with respect to Garcia's testimony, Thomas objected solely on the basis that it was unduly prejudicial pursuant to Evidence Rule 403. He has, therefore, waived the argument he attempts to make on appeal, which relates to Evidence Rule 404(b). *See Grace v. State*, 731 N.E.2d 442, 444 (Ind. 2000) (holding that grounds not raised in the trial court are not available on appeal).

[10] Waiver notwithstanding, we will briefly address Thomas's arguments. Indiana Evidence Rule 403 provides that the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Indiana Evidence Rule 404(b) prohibits evidence of prior bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but further provides that the evidence may be admissible for another purpose, including proving motive. Our Supreme Court has held that evidence regarding a defendant's membership in a gang may be relevant and admissible where it is probative of motive for the commission of a crime. *Williams v. State*, 690 N.E.2d 162, 173-74 (Ind. 1997).

The evidence that Thomas complains of in this case established that: (1) Williams was a member of 187; (2) Garcia was so concerned about gang violence that she patted down each of her party guests for weapons; (3) Thomas was a member of Cash Out Boyz, a rival gang to 187; (4) the gangs frequently feuded; (5) Thomas believed that Williams had shot at a Cash Out Boyz member a night or two before the incident in question; and (6) Thomas told multiple people that he shot Williams as retaliation for Williams's role in the earlier shooting.

As in *Williams*, evidence related to the gang membership of both Thomas and Williams is relevant and intrinsic to Thomas's motive for committing the crime. And while evidence of gang involvement may, indeed, be prejudicial, in this case, the prejudice did not outweigh the probative value of the evidence. *Burgett v. State*, 758 N.E.2d 571, 580 (Ind. Ct. App. 2001). Consequently, the trial court did not err by admitting this evidence at trial.

## II. Sufficiency

Next, Thomas argues that there is insufficient evidence supporting the criminal gang affiliation sentence enhancement. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility. *McClellan v. State*, 13 N.E.3d 546, 548 (Ind. Ct. App. 2014), *trans. denied*. Instead, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable factfinder

could have drawn the conclusion that the defendant was guilty beyond a reasonable doubt, then the verdict will not be disturbed. *Id.*

[14] Indiana Code section 35-50-2-15(b)[2] provides as follows:

> The state may seek . . . to have a person who allegedly committed a felony offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally:
>
> (1)     was a member of a criminal gang while committing the offense; and
>
> (2)     committed the felony offense at the direction of or in affiliation with a criminal gang.

If the jury finds that the State proved these elements beyond a reasonable doubt, then the trial court must sentence the defendant to an additional fixed, consecutive, non-suspendible term of imprisonment equal to the sentence imposed for the underlying felony when, as here, the defendant is sentenced for only one felony.  I.C. § 35-50-2-15(d).

[15] Thomas argues that the State failed to prove that he committed the murder at the direction of or in affiliation with Cash Out Boyz.  Thomas first directs our attention to caselaw interpreting and applying Indiana Code section 35-45-9-3, which defines the crime of participation in a criminal gang.  Indiana courts have held that to be convicted of this crime, the State must prove, among other things, that the defendant acted with a specific intent to further the group's

---

[2] We apply the version of this statute in effect at the time of the murder.

goals. *E.g.*, *Kilpatrick v. State*, 746 N.E.2d 52, 61 (Ind. 2001). As Thomas acknowledges, however, the gang affiliation sentence enhancement at issue in this case is "separate from" the crime defined above. Appellant's Br. p. 23. There is no language of specific intent in the criminal gang affiliation sentence enhancement statute, and we decline to read such language into the law. Instead, in the plain language of the statute itself, the State was required to prove beyond a reasonable doubt that Thomas was a member of a criminal gang while committing the offense—which he does not deny—and that he committed the murder at the direction of or in affiliation with Cash Out Boyz.

[16] The phrase "in affiliation with" is not defined by the statute. This Court has looked to the plain meaning of "affiliate" in the context of this statute, noting that the term is defined as "'to bring into close association or connection,' 'to attach or unite on terms of fellowship,' and 'to associate oneself; be intimately united in action or interest.'" *Armstrong v. State*, 22 N.E.3d 629, 638 (Ind. Ct. App. 2014) (quoting *The Random House Dictionary of the English Language, Unabriged Edition* 24 (1967)), *trans. denied*. To meet its burden under the statute, therefore, the State was required to prove beyond a reasonable doubt that Thomas murdered Williams while in a state of close association, connection, or fellowship with Cash Out Boyz, or while intimately united in action or interest with the gang.

[17] The record reveals that Thomas was a founding member and leader of Cash Out Boyz. Williams was a member of the rival 187 gang. These two gangs had an ongoing feud and rivalry in which gang members regularly fought and shot

firearms at each other. A day or two before the murder, Williams allegedly shot at members of Cash Out Boyz, and Thomas told multiple people after the murder that he had killed Williams in retaliation for that earlier shooting. When Thomas sought out Williams on the night of the murder, he took another armed member of the Cash Out Boyz with him. Thomas bragged about the murder and began calling himself "J-Murder," also bragging that after the murder, people were scared of Cash Out Boyz because they knew he would shoot them. Tr. p. 464, 561. We find that a reasonable jury could infer from this evidence that Thomas murdered Williams in affiliation with Cash Out Boyz. Consequently, we find that the evidence supporting the sentence enhancement is not insufficient.

## III. Appropriateness

[18] Next, Thomas argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[19]     A person who is convicted of murder is eligible for a sentence between forty-five and sixty-five years, with an advisory term of fifty-five years. Ind. Code § 35-50-2-3. Here, Thomas was sentenced to the advisory term.[3]

[20]     Turning first to the nature of the offense, we note that when Thomas learned that Williams was at Garcia's party, he armed himself and took another armed gang member with him to find Williams. They instructed the person who drove their vehicle to wait for them on another street. Then, Thomas and the other gang member hid, waiting for Williams to emerge from the house. When he did, Thomas began shooting at Williams with no regard for the other people present on the public street. Ultimately, Thomas shot Williams in the back as Williams fled for his life. Thomas admitted that the sole reason he killed Williams was in retaliation for another act of gang violence that had occurred a day or two earlier. We do not find that the nature of the offense in any way supports Thomas's sentencing argument.

[21]     As to Thomas's character, he was a founder and leader of the Cash Out Boyz Gang. Since committing the murder at issue herein, he has been convicted of two other felony gun charges. He has a long list of negative contacts with law enforcement dating back to his juvenile years. In this case, after killing

---

[3] While Thomas also focuses part of his appropriateness argument on the sentence enhancement, we note that once a factfinder concludes that the State has met its burden, the enhancement is mandatory and non-discretionary. I.C. § 35-50-2-15. Its terms are set by the statute and neither the trial court nor this Court retain any jurisdiction to alter those terms. *Id.* Consequently, we will not factor the enhancement into our 7(B) analysis.

Williams, Thomas bragged about the murder and even gave himself a new nickname as a result. We do not find that Thomas's character supports his sentencing argument. In other words, we do not find that the fifty-five-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and Thomas's character. Given that, the trial court was required to impose an additional, consecutive fifty-five-year term for the criminal gang affiliation enhancement.

# IV. Federal Case

[22] Finally, Thomas argues that the trial court erred by ordering that his sentence herein be served consecutively to a sentence he is serving for a separate federal conviction. In Thomas's view, the trial court imposed consecutive sentences because it believed it was required to do so. He bases this argument on the following comments made by the trial court at sentencing:

> Not only do I believe there is authority that I can run it consecutively, but I don't know if there is authority that I cannot run it consecutive to another jurisdiction's case. So having considered all of that, having considered the nature of the federal case and Mr. Thomas's history, the sentence will be served consecutively to the federal case[.]

Tr. p. 712. It is readily apparent that the trial court was acknowledging that it could order consecutive sentences but was uncertain whether it was obligated to do so. Regardless, having weighed all of the appropriate considerations, the trial court concluded that consecutive sentences were warranted in this case. We see no basis to disturb that conclusion, and find no error on this basis.

The judgment of the trial court is affirmed.

Crone, J., and Brown, J., concur.